Moncure, P.,
delivered the opinion of the court.
Several interesting questions were discussed in the argument of this case by the able counsel of the different parties; as, for instance—-1st, that the devise contained in the will of Uriah P. Levy, of the Montieello estate in Virginia, together with all the rest and residue of his estate, real and personal, not by the will otherwise specifically disposed of, in trust, to establish and maintain on the said Montieello estate an agricultural school, is void, for vagueness and uncertainty in regard to the beneficiaries intended to be provided for; 2dly, that the said devise is void, because it tends to create a perpe *26 t-uity forbidden by law; and because tbe contingency on which it was limited to take effect, might not happen within the period prescribed by law for the vesting of a valid executory devise; 3dly, that the said devise is not valid, under section 2 of chapter 80 of the Code of Virginia, because it was not “ made for literary purposes or for the education of white persons within this State,” as authorized by that section; but was made “ for the sole and only purpose of establishing and maintaining at said farm of Monticello in Virginia an agricultural school, for the purpose of educating as practical farmers, children of the warrant officers of the United States navy, whose fathers are dead,” without regard to the race or color, or residence of such children; 4thly, that the said section 2, of chapter 80, of the Code of Virginia, was annulled by the fourteenth amendment to the Constitution of the United States; 5tlily, that the invalidity of the said devise, in all its parts, as well in regard to the Monticello estate and the two hundred acres of land, part of the "Washington farm in Virginia, as in regard to the real and personal estate in New York, is res adjudicóla; having been finally decided by the Court <3f Appeals of the State of Yew York, at the June term 1865 of said court, in the case of Levy &c. v. Levy &c., 88 New York R., 6 Tiffany, 97; 6thly, that at all events, the said case is a final and conclusive adjudication of the invalidity of said devise, in regard to the real and personal estate included in it, in the State of blew York; operating as such, not only in that State, but every where else; and 7thly, that the devise being certainly void, as to the real and personal estate in the State of blew York, it is rendered ineffectual and incapable of execution, as to the real estate in Virginia, even if it would be other-' wise valid as to the latter estate; and therefore, on that ground, if no other, the trust as to that estate also must / *27 fail, and the estate must go to the heirs at law of the testator.
In the view we take of this case, it will be unnecessary to decide all these questions; as our opinion, in regard to the last three of them, is conclusive of the case. We will, therefore, proceed to state that opinion, and the reasons on which it is founded. And,
First—That the invalidity of the devise, in all its parts, is res adjudicate, as aforesaid.
The testator died on the 22d day of March, 1862, in the city of New York, which was the place of his residence at the time of his death, and had been for a long time prior thereto. lie left no issue living at his death, hut left a widow and a large number of collateral heirs, consisting of brothers and sisters and the issue of deceased brothers and sisters, residing chiefly in the city of New York, hut some of them residing elsewhere, in and out of the Hnited States; though none of them, it seems, residing in Virginia. His will bore date on the 13th day of May 1858, and was recorded as a will of real and personal estate in the surrogate court of the county of New York, in the State of New York, on the 9th day of June 1862. Afterwards, to wit: on the 17th day of May 1866, it was produced to, and ordered to he recorded by, the Circuit court for the county of Albemarle, in the State of Virginia, as a wall of real and personal estate. On the 12th day of June 1862, Ashel S. Levy and David S. Codrington, two of the executoi’s nominated in the will, wrere duly qualified to act as such executors, by the surrogate of the city and county of New York; said surrogate having sole jurisdiction of said matter; and letter’s testamentary were duly issued to them only; the other persons named as executoi’s neglecting or refusing to act. And the two above named became, and were and are, the sole executors of said will.
*28 On the 31st day of October 1862, the said acting executors of the said testator, who were also acting trustees under his will, brought a suit in the proper court, to wit: the Supreme court of the State of Yew York, for the city and county of Yew York, for the purpose of obtaining a judicial construction of such parts of said will as were set forth in the complaint, and especialty the part which was intended to create a trust to establish and maintain on the Monticello estate an agricultural school. A copy of the will was exhibited with the complaint filed in said court as part thereof. All other parties concerned were made defendants to the suit, including “ the people of the United States,” “ if they chose to appear,” and “the people of the State of Virginia,” “if they chose to appear,” and also including the Hebrew, congregations named in the will. The plaintiffs concluded their complaint by saying, that “inasmuch as they are unable to decide or act upon the grave legal questions involved in the construction of the said will, and are fearful of acting erroneously as trustees of said property, they therefore pray this honourable court to settle and decide as to the validity of said devises and bequests, and the rights and duties of the plaintiffs, as executors and trustees in relation thereto, and all other questions incident thereto; that all said questions may be settled by the judicial decision of this tribunal; and that each of said defendants, if they see fit, may appear and answer this complaint, so that a final decision of all questions relative to the validity of said devises and bequests may be had, the respective rights of all said defendants may be permanently settled, and the duties and powers of the plaintiffs, as executors and trustees, defined and adjudged.” And they asked for such other or further order or direction in the premises as the case might require or the court might think just.
*29 All the defendants appeared, excepting the “Portuguese Hebrew congregation of ^Richmond, Virginia,” and “ the people of the State of Virginia,” who could not be personally served with process, in consequence of the pendency of the then existing civil war; but the summons was served upon the Portuguese Hebrew congregation of Richmond, by publication and deposit in the post-office, under an order duly made and entered in the cause on the 6th of November 1862. The defendants, “ the people of the United States,” appeared and answered by E. Helafield Smith, their attorney, and they submitted their rights in the premises to the court, to make such order and decree” therein as should be agreeable to equity. The cause came on to be heard at a special term of the said Supreme court, on the 18th day of February 1863, and judgment was entered on the 21st of April following, declaring the devises and bequests, on which construction and judgment were prayed for in the complaint, to be invalid and void. An appeal to the general term of the said court was perfected by the plaintiffs on the 24th of April 1863. The cause was heard on the 21st of May, and judgment was rendered on the 30th of November, and entered on the 23d of December 1863, at a general term of said court, reversing or modifying the judgment of the special term. The decision of the court at the general term is reported in 40, Barbours Supreme Court Reports, p. 685-626. An appeal from'the said decision to the Court of Appeals, was perfected by the defendants, or most of them, in January and February 1864. Among the defendants appealing were the people of the United States, by their attorney aforesaid. The plaintiffs in the suit also appealed.
The cause was heard in the Court of Appeals, in June 1865, when a judgment- was rendered by that court, reversing the judgment of the general term, and affirming *30 that of the special term of the Supreme court. The de- . . cisión of the court of appeals is reported in 33 New York Reports, 6 Tiffany, p. 97-139. After that decision was made, the executors and trustees aforesaid, considering ^ a adjudication of the question as to the validity of the said devise and bequest, proceeded to administer the estate of their testator accordingly; and in pursuance of the said decision, the property embraced in said devise and bequest was divided between his heirs at law and next.of kin. , Afterwards, to wit: in July 1868 this suit was brought, for partition among the said heirs at law of the Monticello estate and the 200 acres of the Washington farm, in Albemarle county, Virginia. In the bill the facts aforesaid, or such of them as were deemed material by the plaintiffs, were substantially set out; and though the plaintiffs say they were advised that neither the people of the United States, nor the people of Virginia, nor any of the Hebrew societies named in the will, had any interest in the said lands, yet that it was proper to afford them the opportunity to assert their claim thereto, if they were so inclined; and they were, therefore, made defendants to the suit; and Thomas R. Bowden, Attorney General of the State of Virginia, was also made a defendant. All of the parties, plaintiffs and defendants, appear to have been non-residents of the State, except the defendants, “ the people of the State of Virginia,” Thomas R. Bowden, Attorney General, and “the Portuguese Hebrew congregation of Richmond, Virginia.” Process to answer the bill was duly executed on the defendants, the people of Virginia, and the said Attorney General; and they having failed to appear and answer the bill, it was taken for confessed as to them. The said Hebrew congregation of Richmond appeared and filed an answer. The other defendants, being all non-residents, were duly proceeded against as *31 such by publication. Some of them appeared and answered. On the 30th day of November 1868 the cause came on for hearing; when the court, (without deciding at that time on the claim of the defendant, Jacob S. Rogers, asserted in his answer, to the other lands in the proceedings mentioned, than the 218 acres, which he admitted that the Monticcllo tract contained,) being of opinion that the devise by Uriah P. Levy, of the said 218 acres, is invalid, and that the same ought to be sold for partition among his next of kin, therefore decreed a sale of the same accordingly, by a commissioner ap-; pointed by the court for the purpose. And that is the decree from which the appeal in this case was taken hv the Commonwealth of Virginia and Thomas R. Bowden, Attorney General of the said Commonwealth.
Before we proceed to present our views on the questions arising on the merits of the cause, it may be proper to notice a preliminary one, which presented itself when the argument was about to be commenced, viz: that as the hill was taken for confessed as to the appellants, they ought to have moved the court which rendered the decree to reverse it, according to section 5 of chapter 181 of the Code; and that until such motion is made, and overruled, in whole or in part, an appeal to this court is premature, according to section 6 of the same chapter of the Code.. And we would have felt ourselves bound to dismiss this appeal, as having been prematurely allowed, for the reason aforesaid, if any objection had been made on that ground by the appellees, or if they had not waived such ground of objection. But as they did expressly waive it, and as the case was very fully and ably argued on the merits, we deemed it best for all parties to proceed to hear and decide the case without regard to that preliminary question. A similar course was pursued by this court, in Coffmanv. Sangston, &c., 21 Gratt. 263. *32 We, therefore, now recur to the first point we proposed . to consider, viz: “ That the invalidity of the devise, in its parts, is res adjudícala, as aforesaid.”
Certainly the case was an eminently proper one for a by the executors and trustees, to have the will construed, and the difficulties which attended its execution by them removed out of their way, by a court of competent jurisdiction. And it was eminently proper that such a suit should be brought in the court in which it was brought, to wit: in the Supreme Court of the State of Yew York, for the city and county of Yew York. The testator's domicil, at the time of his death, and for a long time before, was in the said city; his will was recorded there; his executors qualified and resided there; almost all of his heirs and next of kin resided there; and almost all of his estate was located there. There was situated there, real estate included in the residuary devise in question, to the value of two hundred thousand dollars; and personal estate included in that devise to the value or amount of one hundred and thirty-one thousand six hundred and six dollars and fifteen cents; thus making an aggregate amount of three hundred and thirty-one thousand six hundred aud six dollars and fifteen cents, in Yew York; while the property in Virginia, included in the said devise, (which is the only other property included therein,) is of little comparative value ; probably not as much as ten thousand dollars—much less than one-thirtieth of the value of the whole subject of the devise.
"Why, then, is uot the decree of the court of last resort in the State of Yew York, in the suit which was brought there, a final and conclusive decree upon the whole matter of the devise ? It is not pretended that there was any fraud in the institution or prosecution of that suit; that it was not fairly argued and decided; that the trust at *33 tempted to be created by the will was not well represented and defended in the suit. On the contrary, it clearly appears from the reports of the decisions in 40 Barbour and 33 Yew York, before referred to, as well as from a printed pamphlet of .the proceedings in the suit, which was used without objection in the argument of the cause before this court, that there is no foundation whatever for any such pretension. The case was argued with very great ability, as well in support of the decree as against it, by the counsel who argued the case before the Supreme court of Yew York, at its general term, as appears by the argument itself, which is contained in the report of the decision, in 40 Barbour. And it was no doubt ably argued before the special term of said court, and also the court of appeals of Yew York; though we have no report of the arguments before those .courts. The opinions delivered by the Judges in the different courts which decided the case are very elaborate, learned and able. The decision of the Supreme court, at its general term, reported in 40 Barbour, was in favor of the validity of the devise, and that the State of Virginia, and not the United States, was legally authorized by the will to execute the trust; and that court, accordingly, reversed the decree of the same court at its special term. But the court of appeals, in its turn, being the court of last resort in the State, reversed the decree of the general term, and affirmed that of the special term.
Yow, that decree of the court of last resort in Yew York must be final and conclusive, not only as to the property in Yew York, but also as to the property in Virginia; unless it be true that the United States did not legally represent the trust, or that the courts in Yew York had no jurisdiction of the subject, so far as the real estate in Virginia is concerned.
*34 We think the United States did legally represent the trust. The devise was to the “people of the United States;” which means the United States itself. The g0yernment 0f the United States, though a government powers, has capacity to take by devise, for some purposes. If the testator in this case had devised land in the District of Columbia, for the establishment of a school thereon, for the education of the children of deceased warrant officers of the United States navy, there could have been no doubt as to the capacity of the government to accept the devise. Uor can there be any doubt as to such capacity in this case, we presume, with the consent of Virginia to such acceptance. And we have no reason to believe that Virginia would withhold her consent in such a case. On the contrary, we may fairly presume that she would give it. The devise, then, being to the United States, and there being no evidence of non-acceptance, or of any difficulty in the way of acceptance by that government, the presumption is, that it could accept, and did accept the devise. That it did in fact accept, at least so far as to appear in the suit and maintain, to the utmost possible extent, the validity of the devise, is conclusively shown, as aforesaid. Virginia, certainly, had no right to accept the devise, until the Congress of the United States should refuse to accept it, or to take the necessary steps to carry out the intention of the testator. And Congress never did so refuse, but rather the contrary. Then, there was a perfect representation of the trust, in the litigation in New York. The government of the United States was a competent and sufficient, as it was an actual, party to that litigation; and Virginia, in that state of the case at least, was a wholly unnecessary party. There was, therefore, no defect of parties.
“We have now to enquire whether there is any thing *35 in the objection that a part of the subject itself, involved in the litigation, was real estate situated out of the territorial limits of Bew York, and therefore not within the judicial cognizance of the courts of that State.
The title to real estate is always governed by the law, rei sitce; and generally suits concerning it must be brought in the forums of -the State in which it is situate. But the latter is not universally the case; and there are eases in which suits concerning it may be brought elsewhere. A court of chancery acts upon the person; and wdierever the person is found, generally that court has jurisdiction of a case against him. That, however, is not generally the case where the litigation is about real estate situated out of the limits of the State, whose jurisdiction is invoked; though it is sometimes the case. Story on the Conflict of Laws, § 544 and 545, and cases cited in the notes; 2 Leading Cases in Equity 491, 3 Am. ed.; Penn v. Lord Baltimore, 1 Ves. Sr. R. 444; 2 Am. Leading Ca. 614, 5th edition; Massey v. Watts, 6 Cranch’s R. 148; MacGregor v. MacGregor, 9 Iowa R. 65. In the latter case the court seems to have held, on the authority of Massey v. Watts, that when the case involves a naked question of title, jurisdiction cannot be exercised out of the State where the land is situated; but when the object of the suit is to enforce a trust arising ex contractu, or from any other source, the situation of the land will be immaterial, and a remedy may be given by a decree in personam, establishing the trust, or for a conveyance of the land in question; and that the jurisdiction arising under these circumstances will not fail because it is incidentally necessary to decide on title. See, also, Dickinson v. Hoomes, &c., 8 Gratt. 353.
Without intending to lay down any rule i'n regard to the cases in which a court may properly take cognizance of a question concerning real estate extra territorium, we *36 think we may safely say that this is such a case. Here the subject of the devise was one and indivisible, looking to its nature and its objects; and the court could not well decide upon one part without deciding upon the ^ decision upon one, depended upon a decision upon the other. As was said by the learned Judge, (Wright,) in the opinion delivered in the case in 33 New York K.. 136: “The subjects of the trust are the real estate (Monticello) in Virginia, and real and personal estate in New York. The validity of the devise of the land in Virginia depends on the law of that State. As to the estate, real and personal, in New York, it depends on the law of New York; because, as to the real, New York is the locus rei sitce; as to the personal, the locus domieilei. The law, either of Virginia or New York, being hostile to the limitation, it is, I think, wholly void. The testator’s plan embraces and requires all the property. If Monticello be subtracted, the site of the institution is gone; and it cannot be said that the testator would have founded it any where else. If Monticello remain, but every thing else is subtracted, then there are no funds to erect, endow and mi intain the school. In short, the scheme is indivisible,' and must wholly stand or wholly fail.” If the failure of the devise of the real estate in Virginia necessarily involved a failure of the devise of the real and personal estate in New York, then the courts of New York, necessarily having cognizance of the question as to the validity of the devise of the estate in New York, must, incidentally, have cognizance of the question as to the validity of the devise of the estate in Virginia. If the government of the United States was capable of accepting, and did not refuse to accept, the devise—but, on the contrary, claimed under and maintained the validity of the devise in the New York suit, certainly, after the decision of the court in *37 that suit against the claim, that government could not maintain another suit in Virginia for the recovery of the real estate here. The decision in the New York suit would, undoubtedly, be a bar to such other suit in Virginia. Having submitted itself to the jurisdiction of the New York court, and appeared and litigated the question in controversy therein, it was conclusively bound by the judgment of that court. A fortiori, the State of Virginia could not maintain such other suit; for, besides the difficulty of “former judgment,” which would oe in her way, she would have to encounter the further difficulty of having no title, unless she could show that Congress had refused to accept the bequest, or to take the necessary steps to carry it out; which she certainly could not show. We think, therefore, that the question as to the validity of the devise, in all its parts, is res adjudicóla, as aforesaid. But if it be not, then the question arises, which we proposed to consider:—
Secondly—-That at all events the said decision of the court of appeals of New York is a final and conclusive adjudication of the invalidity of said devise, in regard to the real and personal estate included in it, in the State of New York—operating as such, not only in that State, but every where else.
It cannot be necessary to say much, if any thing, more than what has already, incidentally, been said, in support of this proposition. The court, undoubtedly, had cognizance of that entire subject, and had all proper parties before it—at least, if we are right in maintaining that the United States legally and properly represented the trust which the testator intended to create. Certainly the court considered that it had full cognizance of the case, both as to subject and as to parties, and intended to make an enfi of the case, and to pronounce such a decree as would protect the executors and trus *38 tees, and enable them to part safely with the subject in their hands, and surrender it for distribution among the heirs and. next of Mn. They accordingly so surrendered it; and it has been so distributed. Certainly that court will never hold that its decision is not final as to the subject of controversy, which was within the State. And whether that decision be right or wrong, it must be final and conclusive, not only in Yew York, but every where else. By the Constitution of the United States, article 4, section 7, and the act of Congress passed in pursuance thereof on the 24th of May, 1790, the records and judicial proceedings of the courts of each State have the same faith and credit given them in every court of the United States, as they have by law or usage in the courts of the State, whence the said records are or shall be taken. Mills v. Duryee and McElmoyle v. Cohen, 2 Am. Lead. Ca., 5th edition, and notes, p. 597-664. And now as to the last of the third questions we proposed to consider, viz:
Thirdly—-That the devise being certainly void, as to ■ the real estate in Yew-York, it is rendered ineffectual and incapable of execution as to the real estate in Virginia, even though it might otherwise be void as to the latter estate.
The testator contemplated a scheme of charity, which, in his opinion, required the use of the whole subject which he devoted to that purpose. Se was careful to provide against an invasion of the capital, and he relied especially on the estate in Yew York as the means of carrying his scheme into effect, “ The institution must be kept,” he said, “within the revenue derived from this endowment; and under no circumstances can any part of the real or personal estate hereby devised be disposed of; but the rent and income of all said estate, real and personal, is to be held forever inviolate, for the purpose *39 of sustaining this institution. The estate and lands in Tew York can he leased to great advantage for that purpose.” The value of that portion of the subject which was in Tew York was, as we have seen, $331,606 15 cents; while the value of that in Virginia, being the mere intended site of the establishment, was, perhaps, less than $10,000. The whole of the property in Tew York, at least, has- been awept away by the decision aforesaid. It must be self-evident, therefore, that the testator never intended, that in such an event, any attempt should be made to use the small amount of property he had in Virginia for the purpose of building up and continuing the great school he had in contemplation. Such an attempt would, of necessity, be wholly abortive, as well as contrary to the intention of the testator. As was well said by the learned Judge, whose opinion was delivered in the case, in 33 Tew York, before referred to: “The trust failing, as to the real and personal estate in Tew York, appropriated to erect, endow and maintain the school, the devise of the Monticello farm in-Virginia, as the site for the Institution, fails also. The purpose and intent of the testator cannot be effectuated; and therefore every part of the scheme fails.” Id. 137.
But if the devise could be sustained as to the property in Virginia, in regard to which alone can it now by possibility be made effectual, (all the rest of the subject being hopelessly beyond our reach,) it would be a great burden to the State, and no benefit to it or to any person whatever; except, perhaps, to a few officials, who might be employed as agents, to attempt to carry out the scheme of the testator. If the State could lawfully aj - propriate the subject to the payment of her debt, or otherwise, according to her pleasure, it would be of some small value to her. But as it cculd not, lawfully, be *40 applied otherwise than strictly according to the scheme of the testator, it would he a source of perpetual trouble and expense to the State, without any corresponding benefit whatever. It is fortunate for her, therefore, that she will be saved, by our decision of this case, from such an unprofitable burthen.
Before we conclude this opinion, it may be proper to say, that while we deem it unnecessary to decide the other points discussed in the argument of the cause, as aforesaid, we do not mean to intimate that if the whole case had come before us for decision as res integra, as well in regard to the estate in New York as in regard to the estate in Virginia, we would have come to a different conclusion upon it from that at which the Court of Appeals of New York arrived. Beyond all question, the devise would be void, for vagueness and uncertainty as to the intended beneficiaries, according to the principle of the cases of the Baptist Association v. Hart's executors, 4 Wheat’s R.; Gallego’s executors v. The Attorney General, 3 Leigh 450; Brooke v. Shacklett, 13 Gratt. 301; Janey's executor v. Latane, &c., 4 Leigh 327; and Seaburn’s executor v. Seaburn, &c., 15 Gratt. 423; unless,'indeed, the devise could be brought within the operation of the principle of the cases of Inglis v. The Trustees of the Sailors Snug Harbor, 3 Peters’ R. 99; and Literary Fund v. Dawson, &c., 10 Leigh 147; or unless it could be brought within the operation of section 2 of chapter 80 of the Code of Virginia. It is extremely doubtful, to say the least, whether the contingency on which the devise was limited to take effect was not too remote to bring it within the operation of the cases aforesaid, of which Inglis v. The Trustees of the Sailors Snug Harbor is the leading one. And we are strongly inclined to the opinion that the case could not have been brought within the operation of the statute; which provided only *41 “for the education of while persons loithin this Stale/’ while the devise extends to persons without regard to race, complexion or residence. The State might well be willing to undertake the execution of a trust, however troublesome, for the education of her own children, while she might be very unwilling to undertake one for the education of children residing mostly, if not entirely, out of the State.
But, without deciding these questions, we are of opinion that, upon the grounds and for the reasons before stated, there is no error in the decree; and that it be affirmed.
Staples, J.,—Said he did not concur in so much of the opinion of the President as holds that the State of Virginia was represented by the United States, in the suits pending in the State of New York. He thought the State of Virginia was in no manner bound by the decrees rendered in those suits. Upon the other points he concurred with the majority of the court.
Decree affirmed.