**BERGSCHNEIDER v. PEABODY COAL CO.**

**No. 8448.**

Circuit Court of Appeals, Seventh Circuit.

May 12, 1944.

Earl S. Hodges, of Springfield, Ill., for appellant.

Paul W. Gordon, of Springfield, Ill., and Hamilton K. Beebe, of Chicago, Ill., for appellee.

Before EVANS and MINTON, Circuit Judges, and LINDLEY, District Judge.

MINTON, Circuit Judge.

The plaintiff-appellant, Arch J. Bergschneider, sued the defendant-appellee, the Peabody Coal Company, in the District Court for the Southern District of Illinois, Southern Division, to recover overtime pay, liquidated damages, and attorney's fees alleged to be due him pursuant to Section 16(b) of the Fair Labor Standards Act, 29 U.S.C.A. § 216(b).

When the Act went into effect on October 24, 1938, the plaintiff was working for the defendant as a retail clerk and was assisting the payroll clerk at the defendant's Mine 57 in southern Illinois. His salary at that time was $140 per month, for which he had been working sixty to seventy hours per week. As the plaintiff was not an exempt employee under the Act, it was necessary for the defendant to place him on an hourly basis within the limits of the Act as to minimum wages and maximum hours. On October 24, 1938, the defendant placed the plaintiff on a fifty-four hour week basis, and, in order that he might receive for that fifty-four hour week the same $140 per month that he had been receiving, the defendant converted the salary of $140 per month to an hourly wage by use of the following formula:

The monthly wage of $140 was multiplied by twelve months, which gave a yearly wage of $1,680, and this amount was divided by fifty-two to give a weekly wage of $32.31. Under the standards of the Act for the first year, the base pay for which the plaintiff was to be paid for forty-four hours' work per week was arrived at by dividing this $32.31 by 59 (44 hours' straight time and 10 hours' overtime at time and one-half) which equalled $.5476 per hour.

On October 22, 1938, the defendant sent out from its Chicago office to the superintendent of Mine 57 a bulletin for computing the new base rates, which set forth a table of base hourly rates, arrived at by use of the same formula, covering the conversion of monthly wages at $5 intervals per month from $65 to $225 per month. The bulletin was read to the plaintiff and was put into effect as of October 24, 1938. Thereafter, the plaintiff was paid in accordance with these rates. Each check he received had attached to it an earnings statement which set forth the hours he had worked each day, the amount of money he was to receive for that day, and the total amount he had earned for the pay period less any charges against him. The amount of the check corresponded to the amount shown by the earnings statement to be due. On the back of the check preceding the plaintiff's endorsement was this statement: "The endorsement of this check by the payee guarantees acceptance of it in full settlement of the account as stated in the earnings statement bearing corresponding check number." In addition, at the end of each semi-monthly pay period, the plaintiff had signed a statement headed "Recapitulation of Day Labor," which showed opposite his name the number of hours worked and the amount of pay which he was to receive therefor. His signature was written below a statement reading, "Time worked as shown correct." The plaintiff worked part

of the time as cost clerk and therefore was bound to know what his pay was and exactly how it was figured. That the plaintiff knew there was a change taking place in his pay status is evidenced by the fact that he noted in his diary on October 24, 1938, "44 hour week Federal law starts."

The plaintiff worked at the rate of $140 per month until December 31, 1939, when his pay was raised to $150 per month, giving a base rate per hour of $.5674. On October 1, 1940, his pay was increased to $165 per month and his base rate per hour increased to $.6243. On October 16, 1940, his pay was increased to $175 per month and his base rate per hour increased to $.6620. On May 1, 1941, his pay was increased to $200 per month and his base rate per hour was increased to $.76. His pay remained at $.76 per hour until his discharge.

On the occasion of each increase, the plaintiff's base rate was figured according to the same formula contained in the bulletin issued by the defendant, which had been read to all the employees. Each pay check carried the same endorsement provision and the earnings statements and labor recapitulation statements contained the same recitation of hours worked and extensions figured on that basis. The plaintiff continued to work on the terms offered, and he made no complaint concerning the terms until after his discharge.

The plaintiff contends that the base rate of pay should have been determined by dividing the weekly salary by the fifty-four hours worked. This, of course, would have given a higher base rate and his total salary each month would have been in excess of the $140, $150, $165, $175, or $200 which he received during each of certain specified periods.

The case was tried without a jury. The court found that on October 24, 1938, when the Act went into effect, the plaintiff and the defendant had agreed that from and after that date the plaintiff should work on a fifty-four hour week base and should be paid a base hourly wage rate of $.5476 per hour for the first forty-four hours, and time and one-half that base rate for overtime. The court found that with each increase in pay, the plaintiff and the defendant had formed a new contract with a new base rate per hour.

■ It was conceded at the argument that if there was substantial evidence to support the court's finding of such contracts between the plaintiff and the defendant, the judgment would have to be affirmed. On the foregoing facts, we have no hesitancy in saying that there was substantial evidence to support the court's finding that a contract of employment was entered into between the plaintiff and the defendant at a fixed sum per hour at the time the Act went into effect and that a new contract was entered into on the occasion of each increase of salary given the plaintiff. Employment was offered the plaintiff at a fixed sum per hour for a work week of fifty-four hours, with time and one-half for overtime. With full knowledge of the terms of that offer, the plaintiff accepted the work and received the pay earned in accordance with the offer. This created a contract of employment between the parties. Williams v. Jacksonville Terminal Co., 315 U.S. 386, 398, 62 S.Ct. 659, 86 L.Ed. 914.

■ Since the base rate of pay per hour far exceeded the minimum wage fixed by the statute and since overtime was paid at one and one-half times the base rate, there was full compliance with the Fair Labor Standards Act. Mr. Justice Byrnes in Walling v. A. H. Belo Corp., 316 U.S. 624, 630, 62 S.Ct. 1223, 1226, 86 L.Ed. 1716, said: "But nothing in the Act bars an employer from contracting with his employees to pay them the same wages that they received previously, so long as the new rate equals or exceeds the minimum required by the Act."

■ At the time the plaintiff was discharged, he was asked if $50 would cover any overtime he had worked in excess of the fifty-four hours per week, and he replied that it would. This amount was inserted in the release which he signed upon his discharge. The trial court found, however, that the plaintiff was entitled to receive $116.06 for overtime he had worked in excess of fifty-four hours per week. From this sum, the court deducted the $50 already paid, leaving a difference of $66.06. The court allowed a like sum as liquidated damages, as well as $100 for attorney's fees, and gave judgment for the plaintiff in the amount of $232.12. The plaintiff insists that the court should have doubled the $116.06 and then deducted the $50.

If the defendant had been in default in the payment of this overtime at the time of the settlement, the plaintiff's contention would be correct. Birbalas v. Cuneo Printing Industries, Inc., 7 Cir., 140 F.2d 826. The defendant, however, was not in default in the payment of overtime in the

instant case. The defendant had no means of knowing what overtime the plaintiff had worked. The plaintiff was supposed to report his overtime. However, when he was requested to turn in a report of his overtime, he refused to do it. The defendant's obligation to pay could not arise until the plaintiff reported his overtime. By his arbitrary refusal to report his overtime, the plaintiff postponed the due date. The plaintiff by his refusal to report his overtime could not put the defendant in default and make it liable for liquidated damages.

As soon as the plaintiff reported his overtime, he was paid. There could not be "any unpaid overtime" within the meaning of the statute, until the plaintiff reported his overtime. The defendant paid it as reported. This distinguishes the instant case from Birbalas v. Cuneo Printing Industries, Inc., supra, and the cases therein cited. In those cases, the employer was in default in the payment of overtime. In the case at bar there was no such default and the unpaid overtime compensation here, as the court found, was $66.06. The evidence abundantly supports that finding.

The judgment is affirmed.