**John T. DUNLOP, Secretary of Labor, United States Department of Labor**

v.

**The STATE OF NEW JERSEY et al., Appellants.**

**No. 74–1289.**

United States Court of Appeals, Third Circuit.

Argued Oct. 8, 1974.

Final Submission May 5, 1975.

Decided Aug. 4, 1975.

As amended Sept. 3, 1975.

506

William F. Hyland, Atty. Gen. of N. J., Theodore A. Winard, Asst. Atty. Gen., Mary Ann Burgess, Deputy Atty. Gen., Trenton, N.J., for appellants.

William J. Kilberg, Solicitor of Labor, Carin Ann Clauss, Assoc. Sol., Donald S. Shire, Jacob I. Karro, Darryl J. Anderson, U.S. Dept. of Labor, Washington, D.C., for appellee.

Before BIGGS, ADAMS and GARTH, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

The basic issue presented on this appeal is whether the practice of certain New Jersey state institutions in implementing a New Jersey statute [1] authoriz-

---

1. N.J.S.A. 52:14–17.13:

"The work week for basic annual salary for employees in the State service, insofar as practicable and except as provided in section 2 of this act, shall not be more than 40 hours; and, notwithstanding any inconsistent provisions of law, any employee in the State service who is authorized or required to work in any week more than the hours of work established as the regular and normal work week for that class or agency shall be eligible to receive, at the discretion of the department head with the

ing overtime compensation to state service employees in the form of compensatory time off comports with the requirements of § 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. The district court entertained this question on partial cross-motions for summary judgment[2] and ruled that the compensatory time off program was invalid as violative of the FLSA. Subsequently, it permanently enjoined appellants from violation of § 15(a)(2) of the FLSA[3] by continuation of the compensatory time off program as previously practiced by these institutions, ordered retroactive payments for compensation owed state employees, and entered final judgment on this issue pursuant to Rule 54(b), F.R. Civ.P.[4] We affirm the district court's decision that the FLSA was violated and its award of restitution damages. We are, however, required to vacate that portion of the district court's order specifying the time from which retroactive payments are to be computed and to remand this portion of the order to the district court for a consideration of the applicable statute of limitations.

### I.

The Fair Labor Standards Act, enacted in 1938, required employees "engaged in commerce or in the production of goods for commerce" to be paid a minimum hourly wage, 29 U.S.C. §§ 206(a) and 207(a) (§§ 6(a) and 7(a), 52 Stat. 1062, 1063).[5] It likewise prescribed that

such employment be regulated by premium payrates for work in excess of a certain number of hours per workweek. 29 U.S.C. § 207(a). The Congressional purpose in imposing these standards was, and remains, two-fold: (1) to effect greater employment by providing a financial disincentive to employers who require overtime hours; and (2) to compensate employees for the burden of a lengthier work week. *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460, 68 S.Ct. 1186, 92 L.Ed. 1502 (1948); *Walling v. Helmerich & Payne*, 323 U.S. 37, 40, 65 S.Ct. 11, 89 L.Ed. 29 (1944). See also 29 U.S.C. § 202. In order to ensure that these statutory goals would not be subverted by construing the FLSA either to allow employers to evade more stringent state standards or to permit the freezing of wage rates at the minimum hourly wage, Congress specified, § 18, 52 Stat. 1069; now, 29 U.S.C. § 218(a):

"No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter, and no provision of this chapter relating to the employment of child labor shall justify noncompliance with any Federal or State law or municipal ordinance establishing a higher standard than

---

approval of the State Treasurer, the President of the Civil Service Commission and the Director of the Division of Budget and Accounting in the Department of the Treasury, either (1) compensation for the hours worked in excess of the established work week for that class or agency at a rate representing 1½ times the individual's hourly rate calculated by a proration of the annual salary rate of the individual employee, or (2) *compensatory time off at the rate of 1½ hours for each hour worked in excess of the established work week for that class or agency.*" (emphasis added).

2. Rule 56, F.R.Civ.P., 28 U.S.C.

3. 29 U.S.C. § 215(a)(2). This subsection prohibits, *inter alia,* violation of 29 U.S.C. § 207.

4. The district court stayed enforcement of its decision and suspended its permanent injunction during the pendency of this appeal.

5. Congress amended 29 U.S.C. §§ 206(a) and 207(a)(1) in 1961 to expand their compass to include any employee "who in any workweek is engaged in commerce or in the production of goods for commerce . . .". Sections 5(a)(1) and 6(a), 75 Stat. 67, 69. In 1966, these sections were further enlarged by addition of the modifying clause "or is employed in an enterprise engaged in commerce or in the production of goods for commerce." Sections 301(a) and 401, 80 Stat. 838, 841–842. It is to be noted, however, that the gist of this phrase had been incorporated in other portions of the FLSA, including 29 U.S.C. §§ 203(s), 206(b)(i) and 207(a)(2), in 1961. Sections 2(c), 5(b) and 6(a), 75 Stat. 66, 67, 69.

the standard established under this chapter. No provision of this chapter shall justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage under this chapter, or justify any employer in increasing hours of employment maintained by him which are shorter than the maximum hours applicable under this chapter."

Originally, the FLSA exempted the federal and state governments and their political subdivisions from compliance with its provisions. § 3(d), 52 Stat. 1060. In 1966, however, Congress amended the FLSA to encompass certain activities of the states and their political subdivisions, including operations of hospitals, schools, and institutions. At that time, the following pertinent changes were engrafted upon 29 U.S.C. § 203:

"(d) 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee but shall not include the United States or any State or political subdivision of a State (except with respect to employees of a State, or a political subdivision thereof, employed (1) in a hospital, institution, or school referred to in the last sentence of subsection (r) of this section, or (2) in the operation of a railway or carrier referred to in such sentence), or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization." (now cited

as Act of Sept. 23, 1966, Pub.L.No. 89–601, § 102(b), 80 Stat. 831).

. . . . .

"(s) 'Enterprise engaged in commerce or in the production of goods for commerce' means an enterprise which has employees engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person, and which— . . .

(4) is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit)." [6]

These amendments had an undeniable impact on the financial responsibilities of those states involved in such operations. In response to this and other fiscal pressures exerted by its own laws relating to compensation of state employees, the state of New Jersey amended N.J.S.A. 52:14–17.13 to provide for overtime compensation in the form of either wages at a rate one and one-half times the hourly rate or compensatory time off at the

---

**6.** In 1974, Congress again revised 29 U.S.C. § 203. These amendments, effective May 1, 1974, do not affect this appeal since it concerns acts prior to that date. We do note, however, that subsection (d) now reads:

"(d) 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."

Similarly, the 1974 amendments added subsection s(5) to 29 U.S.C. § 203. That addition

includes the "activity of a public agency" as an "[e]nterprise engaged in commerce. . ." A three-judge panel has considered a challenge to the 1974 amendments on the ground Congress had exceeded its commerce power and upheld the constitutionality of the 1974 amendments to the FLSA. *The National League of Cities, et al. v. Brennan,* Civil No. 74–1812 (D.D.C. December 31, 1974). The Supreme Court has granted review, 420 U.S. 906, 95 S.Ct. 823, 42 L.Ed.2d 835 (1975). Oral argument in these appeals was scheduled before the Supreme Court on April 16, 1975. 95 S.Ct. 823 (April 8, 1975).

rate of one and one-half hours for each overtime hour.[7]

Pursuant to his authority under 29 U.S.C. §§ 211 and 217, the Secretary of Labor filed suit against the state of New Jersey and various state hospitals to enjoin violations of the overtime provisions of the FLSA. The Secretary contends that the compensatory time off provisions of the New Jersey statute, as applied to the employees of these state hospitals, violate § 7 of the FLSA, 29 U.S.C. § 207, because the time off is not afforded during the same pay period as earned. We are constrained to agree.[8]

## II.

The FLSA's overtime compensation provision is contained in 29 U.S.C. § 207(a)(1) which reads:

"Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours *unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.*" (emphasis added).

■ Neither this section nor the statutory definitions contained in the FLSA, 29 U.S.C. § 203, define or mandate the form which overtime compensation is to take. Simply stated, the FLSA leaves

unresolved the question of whether overtime compensation must take the form of monetary payments or whether it may assume the form of other types of remuneration, such as time off. This statutory reticence does not, however, render us guideless. Indeed, the FLSA is continually supplemented by the administrative interpretations and regulations of the Administrator of the Wage and Hour Division of the Department of Labor. See 29 U.S.C. § 204. While these administrative rulings do not have the binding effect of law, we may not only properly resort to them for guidance but should also accord them the weight, persuasiveness, and respect to which the expertise of their formulators entitles them. See e.g. *Mabee v. White Plains Publishing Co.*, 327 U.S. 178, 182, 66 S.Ct. 511, 90 L.Ed. 607 (1946); *Irwin v. Clark*, 400 F.2d 882, 884 (9th Cir. 1968), cert. denied 393 U.S. 1062, 89 S.Ct. 715, 21 L.Ed.2d 706 (1969); *Goldberg v. Sorvas*, 294 F.2d 841, 847 (3d Cir. 1961).

The Wage-Hour Administrator has considered the question of compensatory time off as a form of overtime compensation. In Opinion Letter No. 913 (December 27, 1968), he explained:

"An employer may not credit an employee with compensatory time (even at a time and one-half rate) for overtime earned *which is to be taken at some mutually agreed upon later date subsequent to the end of the pay period in which the overtime was earned,* rather than pay cash for the overtime *as it is earned.* However, it is permissible for the employer employing one at a fixed salary for a fixed workweek to lay off the employee a sufficient

---

7. As originally enacted in 1951, N.J.S.A. 52:14–17.13 provided either compensatory time off or wages at a statutorily formulated rate as compensation for overtime. In 1966, the statute was revised, and it deleted the compensatory time off provision effective July 1, 1967. L.1966, c. 323, § 1. The statute was placed in its present form in 1968, effective June 5, 1968, when it was altered in order to provide once again for alternative methods of overtime compensation. L.1968, c. 52.

8. On this appeal, neither party contests the district court's adjudication on the basis of partial cross-motions for summary judgment. Without further discussion, we agree that, in the absence of disputed issues of fact, the district court proceeded properly in adjudicating those motions.

number of hours *during some other week or weeks of the pay period* to offset the amount of overtime worked (i.e. at the time and one-half rate) so that the desired wage or salary for the pay period covers the total amount of compensation, including overtime." (emphasis added).[9]

We conceive this restrictive endorsement of compensatory time off to be perfectly consistent with the language and goals of the FLSA as well as the regulations surrounding it. The restriction that time off for overtime be granted within the same pay period as earned mirrors the stricture placed upon monetary payments for overtime.[10] In fact, this restriction ensures that compensatory time off achieves the main objective of the FLSA's overtime compensation provision: the broadening of employment. That goal could be easily defeated if the employer were allowed discretion to manipulate the scheduled time off so as to coincide with off-season or slack work periods. Moreover, a program of compensatory time off also attains the secondary objective of the FLSA's overtime provision which is that the worker will be compensated for the burden of overtime work. Under such a program, the worker is assured of receiving his fixed salary, even though he has worked less than the total number of hours required at regular pay rates to earn that salary.[11]

Nor does this restricted compensatory time off program offend the Wage and Hour Division's interpretation of the mode of payment for overtime. 29 C.F.R. § 531.27 (1974). This regulation requires that, with certain limited exceptions not applicable to this case, overtime compensation is to be paid in cash or negotiable instruments payable at par. The compensatory time off program fulfills this condition since the overtime worked is paid at the time and a half rate in cash. See note 11, *supra.* Under the compensatory time off program, it makes no difference whether we view the overtime as a triggering mechanism for the accrual of either time off or additional wage compensation. They are, in fact, opposite sides of the same coin.

**9.** CCH Lab.L.Rep. (Wages-Hours) ¶ 30,924 at 42,309 (1966–1969 Transfer Binder). *See also* Opinion Letter No. 868 (October 18, 1968), CCH Lab.L.Rep. (Wages-Hours) ¶ 30,877 at 42,273 (1966–1969 Transfer Binder) (applying the same concepts to Colorado's compensatory time off program).

**10.** The Department of Labor's official interpretation on the timing of overtime compensation reads:

"There is no requirement in the Act that overtime compensation be paid weekly. The general rule is that *overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends.* When the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next pay day after such computation can be made . . . ." 29 C.F.R. 778.106 (1972). (emphasis added).
*See also Walling v. Harnischfeger Corp.,* 325 U.S. 427, 432–433, 65 S.Ct. 1246, 1249, 89 L.Ed. 1711 (1945), creating an exception for the payment *of the 50% premium* "[i]f the correct overtime compensation cannot be determined until some time after the regular pay period . . . .".

**11.** The district court provided an excellent illustration of the manner in which a compensatory time off program would function:

"For example, given a pay period of two weeks, with a fixed salary of $200.00 per week and a fixed workweek of forty hours, an employee works for fifty hours during the first week of the pay period. Under the above Opinion Letter, the employee may then work only twenty-five hours in the second week of the pay period (forty hours less time and one-half for the ten hours accrued overtime) while receiving his full gross pay of $400.00 at the end of the two-week pay period. This would comply with § 7 of the Act and the accompanying regulations and interpretations, since such wages are paid both promptly and in cash." 364 F.Supp. 156 at 158.

The incremental salary benefit, computed at overtime rates, is merely offset by laying off the employee for the exact period necessary to earn that increment while working at regular rates.

■ For these reasons, we hold that a program of compensatory time off, subject to the restriction that the time off be afforded during the same pay period, is permissible under the Fair Labor Standards Act. Accord, *Hodgson v. A. W. Crossley, Inc.*, 365 F.Supp. 1131, 1134 (S.D.N.Y.1973). See *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491–492 (2d Cir. 1960).

### III.

■ Applying these precepts to the New Jersey statute challenged in the case at bar, we must conclude that the manner in which this statute is administered fails to meet the exacting standards of the FLSA. While the statute itself, like the FLSA, does not prescribe a definite period within which overtime compensation must be made,[12] appellants have conceded that their employees are often not afforded compensatory time off within the same pay period as earned.[13]

Our analysis, however, does not end with that concession. We turn, instead, to a consideration of appellants' contentions that: (1) their compensatory time off program is exempted from the FLSA under 29 U.S.C. § 218 because it provides a "higher standard" than the FLSA; (2) federal restriction of compensatory time

off programs constitutes "undue interference" with state operations and is prohibited by the Tenth Amendment; and (3) even if New Jersey must yield to the FLSA's regulations, retroactive payments of overtime compensation, as ordered by the district court, are invalid under the Eleventh Amendment or are inappropriate in this case. Though they are unpersuasive, we believe these arguments deserve brief examination.

Appellants urge that the New Jersey compensatory time off program is salvaged by 29 U.S.C. § 218(a) which prohibits noncompliance with state laws establishing higher standards than the FLSA's. They insist that the New Jersey statute was enacted in response to the demands of employees desiring the option of receiving either cash or time off for overtime work. They reason that, since employees are not forced to take their time off within the same pay period, this allows them to coordinate vacation schedules and personal obligations with their time off. This option and the scheduling flexibility provided by the New Jersey statute, appellants argue, make their program more beneficial than the FLSA's to state employees.

■ The New Jersey statute, however, does not fall within the purview of 29 U.S.C. § 218(a). First, the additional benefits are not necessarily available to the employee since the state has admitted that the discretion as to whether the employee's overtime compensation is cash or time off rests with the state, not with the employee.[14] Second, and more

12. We cannot accept appellants' argument that *Walling v. Harnischfeger Corp., supra,* permits delay in the "payment" of overtime compensation whenever such payment hampers the efficiency of the employer's business. The ruling in that case is limited to the payment of *the overtime premium* in instances where it is *administratively impossible* to determine or compute the correct overtime compensation within the regular pay period. New Jersey has not demonstrated that such a determination is administratively infeasible in this case. Rather, its assertion that state hospitals would operate more efficiently if "payment" of the time off were delayed ignores the primary purpose of the FLSA—to increase employ-

ment. We emphasize that increased employment and the state's maintenance of adequate health care services within budgetary constraints are mutually compatible, not inherently contradictory, goals.

13. *See, e.g.,* Notes of Oral Argument of "Hearing on Defendant's (sic) Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment", July 17, 1973, 4–5.

14. *See* Notes of Oral Argument, *supra* at pp. 7 and 8. *See also* Personnel Circular 70–8, Appellants' Appendix, p. 62a. Though the record is unclear, the state apparently exercises similar control over when the compensatory time off is taken. In fact, the contrary practice

importantly, § 218(a) does not provide protection for programs which, while containing benefits other than those accorded by the FLSA, do not meet and exceed the specific terms of the FLSA. As we noted earlier, § 218(a) was devised to ensure that the FLSA would not inhibit programs providing higher minimum wages or lower maximum hours than the FLSA. Nor does the FLSA preempt state or local regulations benefiting workers not covered by the FLSA. *Maldonado v. International Business Machine Corp.*, 56 F.R.D. 452, 455 (D.P.R. 1972). According benefits supplemental to those of the FLSA does not justify the failure to comply with the FLSA. In that sense, compliance with the FLSA's standards is a *sine qua non* to exemption under § 218(a).[15]

■ Alternatively, appellants suggest that the nature of their businesses provides an exception to the FLSA's immediacy of payments requirement. They suggest that, since their operations are not subject to slack work or seasonal periods, they cannot possibly manipulate

the scheduling of time off so as to defeat the broadening-of-employment objective of the FLSA. Therefore, the requirement of payment of overtime compensation within the same pay period serves no useful purpose. While this argument is both ingenious and appealing, we cannot accept it. Appellants produced no evidence in the district court to demonstrate either the non-seasonal nature of their operations or the increased employment which has resulted from delayed compensatory time off. Moreover, even if we were to take judicial notice of the nature of their operations, we are powerless to legislate such exceptions by judicial fiat. In fact, explicit Congressional exemptions from the FLSA are narrowly construed. *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 295, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959). Where, as in the case at bar, there is no exemption and the regulations interpreting the FLSA are reasonably designed to fulfill its purposes, judicial intervention is unwarranted. The proper forum for consideration of this argument is the legislature, not the judiciary.[16]

would gainsay the state's assertion that its administrative control of the time off program is essential to both the maintenance of adequate health care and the efficiency of the appellant institutions.

15. We summarily reject appellants' conclusion that various internal regulations of New Jersey's program (e.g., that where possible time off will be afforded in the same week as earned and that accrued compensatory time off is limited to sixty hours) justify its exemption from the FLSA.

16. Congress has, in fact, demonstrated an awareness of the unique nature of hospital operations by providing the following exception in 29 U.S.C. § 207(j):

"No employer engaged in the operation of a hospital or an establishment which is an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises shall be deemed to have violated subsection (a) of this section if, pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work, a work period of fourteen consecutive days is accepted in lieu of the workweek of seven consecutive days for purposes of overtime computation and if, for his employment in excess of eight hours and (sic) any workday and in excess of eighty hours in such fourteen-day period, the employee receives compensation at a rate not less than one and one-half times the regular rate at which he is employed."

The impact of this subsection on a compensatory time off program may be demonstrated by the following example:

Assume a pay period of two weeks with a fixed salary of $200.00 per week and a fixed workweek of forty hours in which an employee works eight hours per day for the first seven days of the pay period. If the hospital does not have an agreement under § 207(j), the employee may work only sixteen hours (forty hours less time and one-half for the sixteen hours accrued overtime) during the next seven days, assuming he does not work more than eight hours on any day. He would, of course, receive his full gross pay of $400.00 at the end of the pay period. If the hospital has an agreement under § 207(j), the employee may work as much as twenty-four hours (eighty hours less fifty-six hours) during the ensuing seven days, assuming no more than eight hours of work per day. Again, his gross pay would be $400.00 at the end of the two week pay period.

When Congress amended the FLSA in 1966 by withdrawing the total exemption formerly granted governmental operations and regulating governmental operations of hospitals, schools, and institutions, a constitutional attack was mounted against this enlargement of the FLSA on the ground that it interfered with "sovereign state functions" and was, therefore, prohibited by the Tenth Amendment.[17] The Supreme Court rejected this argument in *Maryland v. Wirtz*, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), holding that the Commerce Clause granted Congress power to enact such modifications and that the particular exercise of power in this instance was a valid regulation of commerce. Appellants concede the validity of *Wirtz*, but maintain that a particular FLSA regulation of state activities may be so unyielding as to violate the Tenth Amendment, even though Congressional power to provide some regulation of those same activities is undisputed. See also *Fry v. United States*, 421 U.S. 542, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975) (No. 73–822). They assert that the requirement that overtime compensation be provided within the same pay period as earned represents such an instance because of its draconian effect on state finances. We cannot agree for, as we have pointed out, this restriction is rationally related to the purposes and language of the FLSA. To hold otherwise would result in the paradoxical ruling that, while Congress has the constitutional power to regulate specified activities, reasonable administrative interpretations of that admittedly legitimate exercise of power cannot be allowed.

Finally, appellants submit that, even if the New Jersey program is invalid, the district court's order that appellants pay retroactive overtime compensation is either invalid or inappropriate. They premise this contention on two arguments: (1) that the Eleventh Amendment bars retroactive relief in damages against the state and (2) that such relief, even if within the powers of the district court, should not have been granted in this particular case. We will examine these arguments *seriatim*.

## IV.

Appellants raised an Eleventh Amendment[18] defense to this suit in their answer to the Secretary's complaint. This defense was rejected by the district court. Acting *sua sponte*, we requested and received supplemental briefs from the parties on the Eleventh Amendment issue as affected by the Supreme Court's ruling in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). We now hold that the Eleventh Amendment and the extension of sovereign immunity in *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), do not bar the district court's order of retroactive relief in damages in this case.

In *Employees v. Missouri Public Health Dept.*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), the petitioners were employees of state health facilities who brought suit for overtime pay due them under § 16(b) of the Fair Labor Standards Act (29 U.S.C. § 216(b)) and damages. The action was dismissed as it was without the consent of the State of Missouri and therefore barred by the doctrine of sovereign immunity. The

---

**17.** The Tenth Amendment to the Constitution of the United States reads:

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

**18.** The Eleventh Amendment, a constitutional reversal of *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793), provides:

"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or Citizens or Subjects of any Foreign State."

*Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890) extended the states' immunity to suit to actions brought by a state's own citizens against the state in federal court without the consent of the state.

Court of Appeals for the Eighth Circuit affirmed as did the Supreme Court.

Mr. Justice Douglas, writing for the majority, concluded that the petitioners came within the scope of the FLSA under the 1966 Amendments to that statute. 411 U.S. at 283, 93 S.Ct. 1614. Their inclusion within the FLSA, however, did not amount to a license of state employees to sue the States in federal courts on claims arising under the FLSA:

"But we have found not a word in the history of the 1966 amendments to indicate a purpose of Congress to make it possible for a citizen of that State or another State to sue the State in the federal courts. The *Parden* opinion [19] did state that it would be 'surprising' to learn that Congress made state railroads liable to employees under the FELA, yet provided 'no means by which that liability may be enforced.' 377 U.S., at 197 [84 S.Ct., at 1215]. It would also be surprising in the present case to infer that Congress deprived Missouri of her constitutional immunity without changing the old § 16(b) under which she could not be sued or indicating in some way by clear language that the constitutional immunity was swept away. It is not easy to infer that Congress in legislating pursuant to the Commerce Clause, which has grown to vast proportions in its applications, desired silently to deprive the States of an immunity they have long enjoyed under another part of the Constitution. Thus, we cannot conclude that Congress conditioned the operation of these facilities on the forfeiture of immunity from suit in a federal forum.

"By holding that Congress did not lift the sovereign immunity of the States under the FLSA, we do not make the extension of coverage to state employees meaningless. *Cf. Parden* . . . *su-*

pra, at 190 [84 S.Ct., at 1211]. Section 16(c) gives the Secretary of Labor authority to bring suit for unpaid minimum wages or unpaid overtime compensation under the FLSA. Once the Secretary acts under § 16(c), the right of any employee or employees to sue under § 16(b) terminates. Section 17 gives the Secretary power to seek to enjoin violations of the Act and to obtain restitution in behalf of employees. Sections 16 and 17 suggest that since private enforcement of the Act was not a paramount objective, disallowance of suits by state employees and remitting them to relief through the Secretary of Labor may explain why Congress was silent as to waiver of sovereign immunity of the States. For suits by the United States against a State are not barred by the Constitution. See *United States v. Mississippi*, 380 U.S. 128, 140–141, [85 S.Ct. 808, 814–815, 13 L.Ed.2d 717]. In this connection, it is not amiss to note that § 16(b) allows recovery by employees, not only of the amount of unpaid wages, but of an equal amount as liquidated damages and attorneys' fees. It is one thing, as in *Parden*, to make a state employee whole; it is quite another to let him recover double against a State. Recalcitrant private employers may be whipped into line in that manner. But we are reluctant to believe that Congress in pursuit of a harmonious federalism desired to treat the States so harshly. The policy of the Act so far as the States are concerned is wholly served by allowing the delicate federal-state relationship to be managed through the Secretary of Labor." (notes omitted; bracketed material added). 411 U.S. at 285–286, 93 S.Ct. at 1618.

Thus, the Supreme Court has recognized, albeit in *dictum*, the right of the Secretary of Labor to sue the States on behalf of state employees in federal courts on claims involving the FLSA.[20]

19. Parden v. Terminal R. Co., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964).

20. We believe it noteworthy that Congress amended 29 U.S.C. § 216(b) in 1974, effective May 1, 1974, to allow employees to sue for

double damages and attorneys' fees "against any employer (including a public agency) in any Federal or State court of competent jurisdiction." § 6(d)(1), Pub.L. No. 93–259 (April 8, 1974). This right, like that previously accorded, is subject to termination upon the fil-

More recently, the Supreme Court commented upon the Eleventh Amendment and the doctrine of sovereign immunity in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). That case arose under the Federal-State Program of Aid to the Aged, Blind and Disabled (AABD), funded equally by state and federal governments. Illinois Public Aid Code, Ill.Rev.Stat., c. 23, §§ 3–1 through 3–12 (1973). *Edelman*, a class action, was brought by Jordan for the alleged wrongful withholding by Illinois state officials of AABD benefits. The district court issued a permanent injunction requiring compliance with the federal regulations and ordering payment of benefits wrongfully withheld. On appeal, the Court of Appeals of the Seventh Circuit held in substance that retroactive benefits could be awarded eligible welfare applicants on the theory that the relief constituted an award of "damages", and that even if the Eleventh Amendment sovereign immunity doctrine was applicable, Illinois had constructively consented to the suit and to such a judgment by participating in the federal AABD program. *Jordan v. Weaver*, 472 F.2d 985 (1973). The Supreme Court reversed as to the award of retroactive benefits, holding that the Eleventh Amendment barred that portion of the district court's order decreeing retroactive payments since the state had not consented to suit. The Court explained that *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), had awarded only prospective relief and precluded a retroactive award even though the award represented "equitable restitution." Consequently, the Circuit Court's reliance upon *Young* was misplaced. The Supreme Court, citing *Ford Motor Co. v. Department of the Treasury of Indiana*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), also held that an award directed against a state official individually, which could be satisfied only from general revenues of the State, was indistinguishable from an award of damages against the State. The Court then held that Illinois did not consent to suit, and thereby waive its Eleventh Amendment immunity, simply by participating in the AABD program.

Appellants contend with some force that the practical consequences of an award of damages in the instant suit are identical to those which were barred in *Edelman* —i.e., the state fisc is diminished for the benefit of private citizens. They argue that the rationale of the *Edelman* decision is that the status of the nominal parties does not control with respect to the validity of a money judgment under the Eleventh Amendment. They urge, instead, that the determinative element is the question of whose pocketbooks are affected.

■ Though there is much logic to the appellants' position, we cannot accept it. Careful consideration of questions of sovereign immunity involves numerous factors, including the identities of the parties to the suit, whether the State has consented to suit, the purposes effectuated by the suit (particularly those permitted by legislative fiat), the nature of the

ing of suit by the Secretary of Labor under 29 U.S.C. § 217. The amendments to § 216(b) since the decision in *Employees, supra,* do not, however, affect this case. We express no opinion, of course, as to any constitutional issues which they may raise. The Eleventh Amendment issue of private citizens' right to sue the state has been raised in an appeal pending before the United States Supreme Court. *The National League of Cities, et al. v. Brennan, supra,* at note 6. *See generally Sarteschi v. Burlein,* 508 F.2d 110 (3d Cir. 1975). The legislative history of the 1974 Amendments to the FLSA makes clear the fact that the amendment to this section was expressly designed to overcome the ruling in *Em-*

*ployees, supra.* U.S.Code, Congressional and Administrative News, Vol. 2, 93d Cong.2d Sess. 1974, at pp. 2850, 2853. No substantial constitutional issue is presented here.

It deserves mention that the 1974 Amendments to the FLSA deleted the requirement, previously contained in 29 U.S.C. § 21(c), that suit by the Secretary on behalf of such employees be preceded by a written request of those employees claiming unpaid compensation. § 26, Pub.L.No. 93–259 (April 8, 1974).

As noted, neither of these amendments affects the instant case since it was filed before the effective date of the 1974 Amendments and involves conduct prior to that time.

activities involved, the type of relief sought, and the source and destination of money damages flowing from the action. Some factors may, by themselves, be determinative. The question of consent is an example. Others, such as the nominal status of the parties, must be considered in arriving at a decision as to the applicability of sovereign immunity, though they do not *per se* require a certain result.

We should remember that "[t]he life of the law," as Mr. Justice Holmes stated, "has not been logic: it has been experience." Holmes, *The Common Law* (33d ed. 1938), p. 1. For over eighty years the courts have held without question that the States' immunity to suit in the federal courts whether in the light of the Eleventh Amendment or under the doctrine of *Hans v. Louisiana, supra,* decided in 1890, does not reach suits brought by the United States. *Department of Employment v. United States,* 385 U.S. 355, 358, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966); *United States v. Mississippi,* 380 U.S. 128, 140–141, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965); *United States v. California,* 297 U.S. 175, 184–185, 56 S.Ct. 421, 80 L.Ed. 567 (1936); *Board of Trustees v. United States,* 289 U.S. 48, 56–60, 53 S.Ct. 509, 77 L.Ed. 1025 (1933); *Sanitary District v. United States,* 266 U.S. 405, 425–426, 45 S.Ct. 176, 69 L.Ed. 352 (1925); *United States v. Texas,* 143 U.S. 621, 641–646, 12 S.Ct. 488, 36 L.Ed. 285 (1892).[21] It seems most unlikely that the Supreme Court would now change the law and hold that, since individual employees will be the ultimate beneficiaries of a suit such as that at bar, the instant suit will be treated as if it had been brought by individuals against the State of New Jersey rather than by the Secretary of Labor. Moreover, the fact that a suit is brought by an official of the United States rather than by the United States itself in its own name certainly does not militate

against the theory that suits brought by the Secretary of Labor to enforce the FLSA have been treated as suits by the United States. *Brennan v. Iowa,* 494 F.2d 100, 103 (8th Cir. 1974), cert. denied, 421 U.S. 1015, 95 S.Ct. 2422, 44 L.Ed.2d 683 (1975) (No. 73–1565); *Mitchell v. Robert DeMario Jewelry, Inc.,* 260 F.2d 929, 932 (5th Cir. 1958), reversed on other grounds, 361 U.S. 288 (1960); *Mitchell v. McCarty,* 239 F.2d 721, 724 (7th Cir. 1957); *Walling v. Frank Adam Electric Co.,* 163 F.2d 277, 283 (8th Cir. 1947); *Walling v. Norfolk Southern Ry. Co.,* 162 F.2d 95, 96 (4th Cir. 1947). Indeed in *Employees* the Supreme Court observed that while Congress had not intended individual employees to sue the State under 29 U.S.C. § 216(b), this conclusion was consistent with the expanded application of the Act to state institutions against which the Secretary brought suit. The Court stated at 411 U.S. 285, 93 S.Ct. 1618: "By holding that Congress did not lift the sovereign immunity of the States under the FLSA, we do not make the extension of coverage to state employees meaningless. . . . [The Act] gives the Secretary of Labor authority to bring suit . . .. [S]uits by the United States against a State are not barred by the Constitution. See *United States v. Mississippi,* 380 U.S. 128, 140–141 [85 S.Ct. 808, 814–815, 13 L.Ed.2d 717]." See also *National Labor Relations Board v. Finch Co.,* 404 U.S. 138, 145–146, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971). Conversely, the result in *Edelman* was premised upon the rule that "a suit by *private parties* seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." 415 U.S. at 663, 94 S.Ct. at 1356, 39 L.Ed.2d 662 (emphasis added).

It is apparent that the United States has a substantial interest under the Commerce Clause in making certain that employees of the States are properly

---

**21.** We do not agree with appellants' assertion that these cases are inapposite because none involved suit by the United States brought primarily for the benefit of a private party. As

we have explained, there are a number of factors which mandate the allowance of damages in this case.

compensated. *Maryland v. Wirtz*, 392 U.S. at 195, 88 S.Ct. 2017. It is obvious, too, that the allocation of money damages against the States benefits not only the employees but aids substantially in the enforcement of the FLSA. This is particularly true in terms of the pre-1974 FLSA since that statute, as the Supreme Court noted in *Employees*, 411 U.S. at 286, 93 S.Ct. 1614, was not particularly reliant upon private enforcement. We may assume that the provision authorizing suits by the Secretary was, likewise, based upon Congressional sensitivity to the delicacy of our federal system. 411 U.S. at 286, 93 S.Ct. 1614. Whatever changes may have been wrought in this regard by the 1974 Amendments, we cannot say that Congress' belief that suits by the Secretary were essential to ensure the compliance of public and private employers with the FLSA is or has become constitutionally insignificant.

 We conclude that the allowance of retroactive monetary damages against the State in this case was constitutionally permissible. Suits by the Secretary of Labor against the States under the FLSA seeking money damages on behalf of state employees are a legally proper method of ensuring the effectiveness of a constitutional exercise of Congressional power pursuant to the Commerce Clause. See generally Comment, "The Elusive Eleventh Amendment and the Perimeters of Federal Power", 46 U. of Col. L.Rev. 211 (1974); Comment,

"The Eleventh Amendment and Retroactive Welfare Benefits", 36 U. of Pitt. L.Rev. 78 (1974).

 We turn now to appellants' contention that retroactive relief in damages was inappropriate within the context of this particular case. There can be no doubt that, under 29 U.S.C. §§ 216 and 217, the power to grant such restitution lies with the district court and is subject to its determination that restitution will: (1) aid in enforcement of the FLSA by depriving violators of ill-gotten gains and (2) protect employers who have complied with the FLSA against the competition with employers who have not. See e.g., *Wirtz v. Malthor, Inc.*, 391 F.2d 1, 3 (9th Cir. 1968). Appellants' contention that neither purpose would be served by providing restitution in this case is without merit. Restitution awards provide a deterrent to those who would fail to comply with the FLSA and whose failure to do so would result in unfair competitive advantage. Though appellants' "gains" may indirectly have resulted in maintenance of adequate health care services, a ruling that restitution is unnecessary would prompt employers to ignore the terms and regulations of the FLSA without fear of restitution payments. We are aware that remedial legislation should be interpreted broadly, but we conclude that the position taken by the appellants is impermissible.[22] The district court did not err in ordering restitution in this case.[23]

---

**22.** *Compare Brennan v. Iowa*, 494 F.2d 100, 104–105 (8th Cir. 1974), cert. denied, 421 U.S. 1015, 95 S.Ct. 2422, 44 L.Ed.2d 683 (1975) (No. 73–1565) holding that a restitution order against the State of Iowa was appropriate where the parties had previously stipulated to such an award in the event that the Secretary of Labor prevailed. There, as here, the Court considered and rejected the argument that restitution should be denied because of financial hardship upon the State.

**23.** In determining the amount of overtime compensation to be awarded, the district court may wish to consider the circumstance that some of these employees have already re-

ceived, although not within the required pay period, overtime compensation in the form of one-and-one-half hours off for each hour of overtime worked. See *Thomas v. Louisiana*, 348 F.Supp. 792 (W.D.La.1972); cf. *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 68 S.Ct. 1186, 92 L.Ed. 1502 (1948); *Gangi v. D. A. Schulte*, 150 F.2d 694, 697 (2d Cir. 1945), aff'd 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946); *Bergschneider v. Peabody Coal Co.*, 142 F.2d 784 (7th Cir. 1944); *Bumpus v. Continental Baking Co.*, 124 F.2d 549, 553 (6th Cir. 1941), cert. denied 316 U.S. 704, 62 S.Ct. 1305, 86 L.Ed. 1772 (1942). But cf. *Roland Electrical Co. v. Black*, 163 F.2d 417 (4th Cir. 1947).

## V.

Despite these rulings which affirm the essence of the district court's opinion, we are required to vacate that portion of the district court's order mandating computation of overtime pay from February 1, 1969. While the Secretary raised the issue of the statute of limitations in his answer, neither party addressed this point in the appeal before us. We emphasize that, under the statute of limitations in effect at the time this suit was filed, any action for unpaid overtime compensation under FLSA must have been commenced within two years after the cause of action accrued or, in the event the violation be deemed "willful", within three years of the accrual of the cause of action. 29 U.S.C. § 255(a) (now cited as § 6, 61 Stat. 87 as amended by Act of September 23, 1966, Pub.L.No. 89–601(b), 80 Stat. 844). The complaint in this case was filed on October 1, 1971. Therefore, if the violation was *not* willful, payments may only be made retroactive to October 1, 1969. *Wirtz v. Chase*, 400 F.2d 665, 669 (6th Cir. 1968). If the violation was willful, the court may order back payments extending to October 1, 1968 in which event the order made here would be appropriate.[24] However, the district court never found the violation to have been willful. The sole intimation in the record of such a finding is the court's order. Indeed, the Secretary's complaint did not allege the violation to be willful, and the record is barren of any consideration whatsoever of that issue.

In framing an appropriate order, the district court should remain cognizant of the fact that appellant Vineland State School ("Vineland") was added as a defendant by *consent order* of May 7, 1973. The order specifically provided that the amendment will *not* relate back to the filing of the original complaint. Thus,

any order directing Vineland to make back payments may extend only to May 7, 1971, if the violation was not willful.

## VI.

We are not insensitive to the plight of the States and their institutions when Congressional actions, however valid, increase their fiscal burdens in substantial, even dramatic, fashion. In such instances, though, resort lies in the legislature, not the judiciary. We believe, as we noted, that Congress is not oblivious to this situation. See note 16, *supra.* If appellants believe that a Congressional exemption will permit enactment of programs which meet the purposes of FLSA without causing drastic financial consequences, they should apply for relief in the halls of Congress.

By our holding, we simply reiterate what the Supreme Court emphasized in *Employees*, 411 U.S. at 284–285, 93 S.Ct. at 1618.

> "*And when Congress does act, it may place new or even enormous fiscal burdens on the States. . . . We deal here with problems that may well implicate elevator operators, janitors, charwomen, security guards, secretaries and the like in every office building in a State's governmental hierarchy. Those who follow the teachings of Kirschbaum v. Walling, supra, and see its manifold applications will appreciate how pervasive such a new federal scheme of regulation would be.*" (emphasis added).

The judgment of the district court will be affirmed with respect to its determinations that FLSA was violated and that restitution damages should be awarded. We will vacate that portion of the order requiring back payments from February 1, 1969 and remand for a modification of the judgment not inconsistent with this

---

**24.** The Secretary's complaint alleged that appellants were violating the FLSA since February 1, 1969. Appellants' answer denied this allegation. The record does not establish the

exact date when New Jersey implemented the program of compensatory time off. On remand, evidence should be taken on this point.

opinion and for a determination of the damage award. See note 23, *supra.*

ADAMS, Circuit Judge (concurring).

I join the comprehensive opinion of Judge Biggs with respect to all the issues presented here except the question of the effect of the Eleventh Amendment upon the Secretary of Labor's quest for a retrospective award of unpaid overtime compensation. Regarding that aspect of the case, a separate statement appears appropriate because my conception of the troublesome and important sovereign immunity issue diverges somewhat from the ideas expounded in the majority opinion.

The Eleventh Amendment [1] was adopted, at least in part, in order to enhance the public weal by providing the states with constitutional protection against interference with the efficacious discharge of their governmental functions by the dissipation of the state treasury.[2] Although some commentators have disputed the contemporary utility of retaining such a palisade around the state sovereign,[3] the Eleventh Amendment remains an integral part of the Constitution. Notwithstanding the precise wording of the amendment, the Supreme Court has long held that, in the absence of consent, suits against a state by citizens of that state are barred as well as suits by citizens of other states.[4]

The immunity of the states is not all-encompassing, however. Neither the Eleventh Amendment nor notions of state sovereignty have been held to proscribe suits against a state by the United States [5] or by an official acting on behalf of the federal government.[6] Also, the Supreme Court has declared that Congress in the exercise of its interstate commerce power has the constitutional authority to subject the states to suits by their citizens.[7]

After Congress extended the Fair Labor Standards Act so as to cover state employees who work in schools, hospitals and mental institutions, the Supreme Court was presented in *Employees v. Missouri Public Health Dept.*[8] with the question whether sovereign immunity forestalled such state employees from initiating suit in the federal courts to recover unpaid overtime compensation plus an equal amount in liquidated damages. In an opinion holding that the Court would not presume a congressional intent to enable an individual citizen to sue a state in federal court when such actions are not indispensable to the effective implementation of the legislative scheme, Justice Douglas averred, in a statement not indispensable to the conclusion reached in the case:

> By holding that Congress did not lift the sovereign immunity of the States under the FLSA, we do not make the

---

1. U.S.Const. amend. XI:

 The Judicial power of the United States shall not be construed to extend to any suit at law or in equity, commenced or prosecuted against one of the United States by Citizens of another State, or Citizens or Subjects of any Foreign State.

2. *See* J. Goebel, Jr., 1 Holmes' Devise History of the Supreme Court of the United States: Antecedents and Beginnings to 1801, 741 et seq. (1971); Jaffe, Suits Against Governments and Officers: Sovereign Immunity, 77 Harv.L. Rev. 1, 19 (1963).

3. *See*, Note, The Eleventh Amendment and Retroactive Welfare Benefits, 36 U.Pitt.L.Rev. 78, 94, 104–107 (1974); *cf.* Reeves, Leviathan Bound-Sovereign Immunity in a Modern World, 43 U.Va.L.Rev. 529 (1957).

4. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed.2d 842 (1890); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

5. *See United States v. Mississippi,* 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965).

6. *Brennan v. Iowa,* 494 F.2d 100, 103 (8th Cir. 1974), *cert. denied,* 421 U.S. 1015, 95 S.Ct. 2422, 44 L.Ed.2d 683 (1975); *Walling v. Norfolk Southern Ry.,* 162 F.2d 95 (4th Cir. 1947).

7. *Parden v. Terminal Ry.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); *Employees v. Missouri Public Health Department,* 411 U.S. 279, 285–87, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); *Edelman v. Jordan,* 415 U.S. 651, 671–74, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

8. 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973).

extension of coverage to state employees meaningless. . . . Section 16(c) gives the Secretary of Labor authority to bring suit for unpaid minimum wages or unpaid overtime compensation under the FLSA. . . . Section 17 gives the Secretary power to seek to enjoin violations of the Act and to obtain restitution in behalf of employees. Sections 16 and 17 suggest that since private enforcement of the Act was not a paramount objective, disallowance of suits by state employees and remitting them to relief through the Secretary of Labor may explain why Congress was silent as to waiver of sovereign immunity of the States. For suits by the United States against a State are not barred by the Constitution.[9]

As an indicium of legislative intent with respect to the imposition of liability upon the states, Justice Douglas looked to the need to award damages against the states in order to enforce the Act. In the present case the congressional intent embodied in the FLSA seems unclear, since there appears to be some doubt regarding the necessity of the award of retrospective overtime compensation in addition to injunctive relief in order to effectuate compliance by the states with the FLSA. Therefore, I continue to be concerned whether Congress, at the time of the 1966 amendments,[10] intended to inflict financial burdens of this kind upon the states.

The Supreme Court, however, has declared, albeit only in dictum, that the sovereign character of the states does not foreclose the Secretary of Labor from obtaining for the benefit of state employees a money judgment for unpaid overtime compensation, thereby achieving indirectly what the state employees could not accomplish for themselves. It seems inappropriate for this Court, as distinguished from the Supreme Court,

to enter a ruling which would be in derogation of the import of such language.

Accordingly, I concur in the judgment of the Court affirming the decision of the district court.

---

**9.** 411 U.S. at 285–86, 93 S.Ct. 1614.

**10.** The 1974 amendments to the FLSA were not in effect during the period in which the

events forming the basis of this litigation took place. Therefore, the legislative intent manifested in *that* enactment is not relevant to this appeal.