**UNITED STATES of America, Appellant,**

v.

**Franklin STUDIVANT et al., Appellees.**

**No. 74–2130.**

United States Court of Appeals, Third Circuit.

Argued Oct. 29, 1975.

Decided Jan. 22, 1976.

Jonathan L. Goldstein, U. S. Atty., William Kanter, William L. Patton, Thomas S. Moore, Robert S. Greenspan, Dept. of Justice, Washington, D. C., for appellant.

Phillip J. Boscarell, Jr., Lewis, Siegal, Wood & Needel, Trenton, N. J., for appellees.

Before GIBBONS, BIGGS and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The question presented here is whether the United States is bound by the provision of a state statute which requires that those claiming benefits under the Act shall file a notice of intent within a specified time. The district court held that the time requirement was not a statute of limitations and that the federal government must abide by the notice provision. We agree and affirm.

The appeal is from an order dismissing one of the government's two counts in a complaint based on the Federal Medical Care Recovery Act, 42 U.S.C. §§ 2651–2653.[1] The suit was brought to recover the cost of medical and hospital care provided two members of the armed services injured in an automobile accident in New Jersey. The defendants Studivant are the owner and operator of the car in which the servicemen were passengers, and the other defendant, John A. Waddington, is the Director of Motor Vehicles of New Jersey.

The government alleges that the Studivants operated their automobile in a negligent manner on June 7, 1970 and that they are liable for the government's expenditures in treating the servicemen's injuries. It appears that the Studivants are uninsured and unable to satisfy a judgment against them. They have never been served with process and the count against them is not before us.[2]

The second count of plaintiff's complaint asserts a claim against the Unsatisfied Claim and Judgment Fund Board of New Jersey, which functions under the jurisdiction of defendant Waddington. The government contends that it is a "qualified person" as defined by the New Jersey Statute and thus is entitled to be paid by the fund because of inability to recover from the Studivants.

---

1. 42 U.S.C. § 2651 reads in part:

   "(a) In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment . . . to a person who is injured . . . under circumstances creating a tort liability upon some third person . . . to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished . . .
   
   and shall, as to this right be subrogated to any right . . . that the injured . . . person . . . has against such third person . . ."

2. Not having been served, the Studivants are not parties within the meaning of Fed.R.Civ.P. 54(b). *Ferguson v. Bartels Brewing Company*, 284 F.2d 855 (2d Cir. 1960). Hence, the order of the district court is final and we have jurisdiction.

The defendant Waddington filed an answer on behalf of the Board setting forth a number of defenses, including the government's failure to give timely notice of its claim as required by the statute. The district court was persuaded by this point, granted the Board's "Motion for Judgment on the Pleadings," and dismissed the complaint as to Waddington.

New Jersey maintains an Unsatisfied Claims Fund to provide relief for victims of automobile accidents who are unable to collect damages from financially irresponsible tortfeasors. The enabling legislation contains certain restrictions, including a restrictive definition of "qualified persons" who are eligible for benefits and a requirement of timely notice of intent to submit a claim. N.J.S.A. § 39:6–65 provides in part that "as a condition precedent" to a right of payment from the fund, a "qualified person" must give "notice to the board within 15 days of receiving notice that an insurer had disclaimed on a policy of insurance." [3]

The government avers that, while the registration of the Studivant car certified that it was covered by the Allstate Insurance Company, on March 15, 1971 the carrier advised that neither Studivant was insured.[4] The government did not file its notice with the Board until May 25, 1971, more than seven weeks after the statutory time had expired. The United States takes the position that the time specified in the New Jersey Statute is in the nature of a statute of limitations which is not applicable to it.

A state statute of limitations is not binding on the United States in a suit under the Federal Medical Care Recovery Act. *United States v. Gera*, 409 F.2d 117 (3d Cir. 1969). *See United States v. Summerlin*, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940). The question presented then is whether the time set for giving notice is a statute of limitations.

Preliminarily, we note that a statute of limitations is a restriction on the time within which a party may institute proceedings in an appropriate court.[5] The limitations do not affect the merits of the controversy or the underlying right to recover, but rather are directed toward setting the time when resort must be had to the court. By way of contrast, a condition precedent affects the cause of action itself, the right of a party to obtain judicial relief, and not the time when suit must be filed.

The New Jersey statute terms the requirement of notice to the Board "a condition precedent." This requirement goes to the validity of the claim itself: absent the required notice, the injured party has no right under the statute to receive compensation. *Keith v. Petrakakas*, 98 N.J.Super. 153, 236 A.2d 402 (1967), *aff'g*, 95 N.J.Super. 262, 230 A.2d 543 (1967). Payment from the fund is not based on a common law right but is the product of a purely statutory remedy to which a state may validly apply conditions and restrictions.

---

3. "Any qualified person . . . who suffers damages resulting from bodily injury or death or damage to property arising out of the ownership, maintenance or use of a motor vehicle in this State . . . and whose damages may be satisfied in whole or in part from the fund, shall . . . within 90 days after the accident, *as a condition precedent to the right* thereafter to apply for payment from the fund, give notice to the board . . . of his intention to make a claim thereon for such damages if otherwise uncollectible; provided, any such qualified person may, in lieu of giving said notice within said time, make proof to the court on the hearing of the application for the payment of a judgment . . . that he gave notice to the board within 15 days of receiving notice that an insurer had disclaimed on a policy of insurance so as to remove or withdraw liability insurance coverage for his claim against a person or persons who allegedly caused him to suffer damages." N.J.S.A. § 39:6–65 (emphasis supplied).

4. The parties stipulated that for purposes of the motion below, the action of Allstate was to be treated as a disclaimer.

5. The first general enactment applicable to personal and real action was passed in 1623 by stat. 21 Jac.I. c. 16, known since as the Statute of Limitations. 2 Bouv.Law Dict. Rawle's Third Revision, p. 1998 (1914).

*United States v. Hartford Accident and Indemnity Company,* 460 F.2d 17 (9th Cir.), *cert. denied,* 409 U.S. 979, 93 S.Ct. 308, 34 L.Ed.2d 243 (1972), held that a suit by the United States was barred because the government failed to comply with a condition precedent. There the statute provided that no recovery could be had under uninsured motorist coverage unless the claimant filed suit against the tortfeasor within one year after the accident. The court determined that since the United States had not complied with the statutory obligation, no cause of action had accrued and one could not be created by the federal exemption from a state statute of limitations.

■■ This is not a case where a notification requirement was appended to a common law cause of action, *see United States v. City of Minneapolis,* 68 F.Supp. 585 (D.Minn.1946). Rather, it is one where compliance with the statute must be observed before any rights can accrue. The notice provision does not affect the time when suit must be filed, but it does determine whether a cause of action exists. Nor is this case governed by *United States v. Moore,* 469 F.2d 788 (3d Cir. 1972), *cert. denied,* 411 U.S. 905, 93 S.Ct. 1528, 36 L.Ed.2d 195 (1973). *Moore* held that a state law interspousal immunity did not preclude the government from maintaining a suit. The

court reasoned that the immunity was merely a disability attached to the right to sue and did not destroy the defendant's tort liability. The underlying cause of action was based on common law negligence and not on a statute which created a restricted right of recovery. Here, failure to comply with the condition precedent prevented the government from acquiring a cause of action. With no fundamental "circumstances creating a tort liability upon" the Board, the United States had no basis for its suit. *See United States v. Fort Benning Rifle and Pistol Club,* 387 F.2d 884 (5th Cir. 1967).[6]

We conclude that the district court properly dismissed the complaint because of the government's failure to comply with the statutory condition precedent.[7]

The judgment of the district court will be affirmed.

BIGGS, Circuit Judge (dissenting).

*1.*

This Court held in *United States v. Moore,* 469 F.2d 788 (1972), that the Federal Medical Care Recovery Act (FMCRA), 42 U.S.C. §§ 2651–2653, created an independent right of action in the United States, not subject to a Maine state barrier, *i. e.,* a right of action unimpaired by the vagaries of Maine state family immunity laws.[1] Relying on

---

**6.** The United States has an independent right of action, but it is limited by the statutory language that the injury occur "under circumstances creating a tort liability upon some third person . . . to pay damages therefor . . . ." To the extent that the federal government's cause of action depends upon a tort liability determination under state substantive law, the concept of subrogation applies. *United States v. Haynes,* 445 F.2d 907 (5th Cir. 1971); *United States v. Housing Authority of City of Bremerton,* 415 F.2d 239 (9th Cir. 1969); *United States v. York,* 398 F.2d 582, 584 (6th Cir. 1968); *United States v. Fort Benning Rifle and Pistol Club, supra.* Since Congress chose to so limit the right of recovery under the Federal Medical Care Recovery Act we perceive no constitutional issue here.

**7.** The district court also ruled that the United States was a "qualified person" under the statute. We do not reach this point because our

affirmance rests on the notice provision. We do note, however, that the statute says that "'[p]erson' includes natural persons, firms, co-partnerships, associations and corporations." The absence of such terms as "governmental bodies" or "governmental entities" may have significance. *See* Annotated Code of Maryland, Article 66½, § 150 *et seq.* Since the courts of New Jersey have not yet had the occasion to interpret this definition, we think it preferable in the circumstances here to defer consideration of the issue. We neither approve nor disapprove of the district court's decision on that point.

**1.** The Court stated, 469 F.2d at 792: "The holding that enforcement of the [FMCRA] is subject to the vagaries of state family immunity laws is grievous error, in utter disregard of the Congressional intent in enacting the [FMCRA]. *Subjection of enforcement of the [FMCRA] to vagaries of state laws would*

*United States v. Standard Oil Co.,* 332 U.S. 301, 305–06, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947), this Court observed: "The Act is a federal law which creates an *independent substantive federal right, enacted by Congress pursuant to its constitutional powers* in matters of military affairs and federal fiscal policy."[2] (Emphasis added). 469 F.2d at 793. This is plainly a finding that Congress was exercising its plenary constitutional powers in enacting the FMCRA. See the heading "3." in this opinion, *infra.*

The majority, assuming without deciding the United States to be a "qualified person" within the meaning of the New Jersey Act, N.J.S. § 39:6–65, indicated there would be no question of the existence of a right of recovery in the United States if the alleged defense of condition precedent was not deemed to be available. It is strange indeed that, in the opinion of the majority, *periods of time,* statutes of limitations, cannot bar recovery by the United States under the FMCRA, whereas, in the opinion of the majority conditions precedent requiring suits to be commenced by particular *points in time* can and will do so. If the statute indeed creates an independent federal right of action, recovery can be barred only by a federal statute or federal decisional law, neither presently visible nor available.

### 2.

In the instant case the majority does not decide the issue of whether the United States is a "qualified person" within the meaning of the New Jersey Act, N.J.S. § 39:6–65. I entertain no doubt, however, in view of the decided cases, that the learned District Judge was correct in finding that the United States

was a qualified person, for, as he points out in his opinion:[3] "The United States Government has often been characterized as simultaneously corporate and politic in nature. *United States v. Whitcomb* [314 F.2d 415, 417 (4th Cir. 1963)]; *Helvering v. Stockholms etc. Bank,* 293 U.S. 84, 91–93 [55 S.Ct. 50, 79 L.Ed. 211] (1934); *Ohio v. Helvering,* 292 U.S. 360, 370 [54 S.Ct. 725, 78 L.Ed. 1307] (1934); *Stanley v. Schwalby,* 147 U.S. 508, 517 [13 S.Ct. 418, 37 L.Ed. 259] (1893). Thus in the instant case, I am satisfied that the United States may properly be classified as a 'corporate person' within the meaning of N.J.S.A. 39:6–62 without offending in any way the legislative intent which inspired the passage of the Unsatisfied Claim and Judgment Fund Act. That statute provides victims of automobile accidents with a financially responsible source from which to seek damages. *McFarland v. Motor Club of Am. Ins. Co.,* [120 N.J.Super. 554, 295 A.2d 375 (1972)]. In the instant case, it is the federal public treasury which is the victim of the Studivants' inability or unwillingness to respond in damages."

### 3.

The majority opinion completely overlooks the large constitutional issue presented. The majority's conclusion seems to fly in the very face of the power conferred upon the United States by the Constitution and seemingly obliterates that power. I would agree that the United States could limit its rights under the FMCRA in any way it saw fit but an examination of the legislative history of the Act will demonstrate that it was the intention of some proponents of the Act, as originally proposed, that the United States should have no independent right of action but should be limited to a position of subrogation to the

---

*make a shambles of the [FMCRA]."* (Emphasis supplied).

**2.** In *Moore* recovery under the Maine law was clearly barred to the United States because of the Maine doctrine of no intrafamilial liability. This Court, in the view of this writer in effect

solved the problem by creating a federal common law tort. *See* dissenting opinion, 469 F.2d at 799.

**3.** Civil Action No. 669–73 in the United States District Court for the District of New Jersey. The District Court opinion is unreported.

claim of the individual who had incurred damage. See *Moore*, 469 F.2d at 800, n. 10.[4] It will be observed that the idea that such a limited position for the United States was abandoned by Congress and the Sovereign was given, as we have said, an independent right of action. The power of the fisc is lodged in the Congress. In *Clearfield Trust Co. v. United States* 318 U.S. 363, 366, 63 S.Ct. 573, 574, 87 L.Ed. 838 (1943), it is stated: "We agree with the Circuit Court of Appeals that the rule of *Erie R. Co. v. Tompkins*, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487], does not apply to this action. The rights and duties of the United States on commercial paper which it issues are governed by federal rather than local law. When the United States disburses its funds or pays its debts, it is exercising a constitutional function or power. This check was issued for services performed under the Federal Emergency Relief Act of 1935, 49 Stat. 115. The authority to issue the check had its origin in the Constitution and the statutes of the United States and was in no way dependent on the laws of Pennsylvania or of any other state." See and compare, *Board of Comm'rs v. United States,* 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313 (1939). See in particular *Royal Indemnity Co. v. United States,* 313 U.S. 289, 294, 61 S.Ct. 995, 997, 85 L.Ed. 1361 (1941): "Power to release or otherwise dispose of the rights and property of the United States is lodged in the Congress by the Constitution. Art. IV, § 3, Cl. 2."

An examination of Mr. Justice Rutledge's opinion in *United States v. Standard Oil Co.*, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947), will disclose that all of the then Justices of the Supreme Court agreed that Congress could pass such an Act as the FMCRA. Mr. Justice Rutledge stated at 314–317, 67 S.Ct. 1604, that it was for the Congress not the judiciary to make appropriate new laws concerning the right of the Government to recover for the loss of a soldier's services. I point out that there is no Eleventh Amendment bar to suits brought by the United States pursuant to its plenary power against a State or a department of a State. We so held in *Dunlop v. New Jersey*, 522 F.2d 504 (3 Cir. 1975). In *Dunlop*, we reiterated what the Supreme Court emphasized in *Employees v. Missouri Public Health Dep't*, 411 U.S. 279, 284–85, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), that " '. . . *when Congress does act, it may place new or even enormous fiscal burdens* on the States . . .' " (Emphasis added). See also Judge Adams' illuminating concurring opinion in *Dunlop* in which he states: "The immunity of the states is not all-encompassing, however. Neither the Eleventh Amendment nor notions of state sovereignty have been held to proscribe suits against a state by the United States or by an official acting on behalf

---

4. "10. Mr. Bernzweig points out in his cited article, 64 Col.L.Rev. 1257, 1261 n. 23: 'For example, the Deputy Attorney General [now Mr. Justice Byron R. White] stated in his report: "It was, therefore, considered preferable to bottom the basic theory of this legislation on the 'subrogation' concept, one which is universally recognized, understood, and regularly applied by all courts, and which would more closely conform the rights of the United States, and the procedure for their enforcement, to the local law and practice, whatever it might be." '

"The Deputy Attorney General also stated in his letter of August 1, 1961 to Mr. Celler, Chairman of the House Judiciary Committee, 1962 U.S.Code Cong. and Adm.News, pp. 2643, 2644, the following: '[I]f under local law the injured person would have no claim on account of such damages the United States would also have none; if he would have such a claim, the United States would become entitled to that claim, but to no more. This provision would therefore make allowance for even the rare situation where, under local law, a person would have no right to recover on account of medical expenses which he had neither paid nor become obligated to pay.'

"See the comments of the Department of Health, Education and Welfare and the Comptroller General. S.Rep.No.1945, 87th Cong., 2d Sess. 10–13, 16–22, U.S.Code Cong. and Admin.News 1962, p. 2643 . . . ."

of the federal government. Also, the Supreme Court has declared that Congress in the exercise of its interstate commerce power has the constitutional authority to subject the states to suits by their citizens." (Notes omitted).[5]

In the case at bar Congress created the FMCRA. The United States had the power to pass that Act even though it imposes a money judgment on the State of New Jersey. New Jersey cannot defeat that imposition. If New Jersey cannot defeat the impact of federal power directly, how can it do so indirectly by attaching a condition precedent? In my opinion it cannot. The majority opinion does not discuss or decide this very important constitutional issue.

### 4.

The majority attempts to distinguish *Moore,* but in fact overrules it. We should not do this except by a court *en banc.* Either *Moore* went too far, or the majority in the instant case does not go far enough. This confused situation should be resolved by this Court or by our Appellate Tribunal. The present puzzling condition of the law does little justice to the United States or to the States.

For the reasons stated I must respectfully dissent. I would reverse the judgment of the district court and permit recovery by the United States.

**5.** The cases cited in Judge Adams' footnotes 4 to 8 are equally illuminating. *See Edelman v. Jordan,* 415 U.S. 651, 671–74, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Employees v. Missouri Public Health Dep't,* 411 U.S. 279, 285–87, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); *United States v. Mississippi,* 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965); *Parden v. Termi-nal Ry. Co.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Brennan v. Iowa,* 494 F.2d 100 (8th Cir. 1974), *cert. denied,* 421 U.S. 1015, 95 S.Ct. 2422, 44 L.Ed.2d 683 (1975); *Walling v. Norfolk Southern Ry. Co.,* 162 F.2d 95 (4th Cir. 1947).