**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4227
_____

STEPHEN R. KING,

Appellant

v.

DEPUTY ATTORNEY GENERAL DELAWARE;
DETECTIVE FINCH, Middletown Police Department;
SANDRA KNAUER, L.C.S.W, Middletown Counseling Services;
TOWN OF MIDDLETOWN; OFFICE OF THE ATTORNEY GENERAL
DELAWARE; MIDDLETOWN POLICE DEPARTMENT;
MIDDLETOWN COUNSELING SERVICES

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1:10-cv-00098)
District Judge:  Honorable Gregory M. Sleet

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 28, 2015
Before:  RENDELL, GREENAWAY, JR. and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: June 11, 2015)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

On New Year's Eve in 2007, Stephen R. King, then a social worker, spoke to a Middletown police officer on the telephone and stated that one of his charges, a 14-year-old boy, needed a ride home.[1]  As the police officer was explaining that he did not run a taxi service, he overheard the boy say something along the lines of "he touched me."  The officer went to the home to investigate.  There, the child accused King of pulling him close while they were on a bed together and touching him inappropriately a year earlier.  He also stated that King had, among other things, pornography and marijuana in his home.  Defendant Detective Thomas Finch took over the investigation, conducting interviews with King and the boy and subsequently obtaining search warrants and seizing computers and hard drives found at the residence.

Detective R. Scott Garland, an experienced detective with the Delaware State Police High Technology Crimes Unit, then examined the seized items.  He prepared a summary of what he found on the computers and hard drives, concluding that the contents included pornographic images depicting adolescent children, primarily boys between the ages of 12 and 17, performing sexual acts.  Finch then referred the matter to Defendant Deputy Attorney General Donald Roberts.

After viewing the images with Garland and Finch, Roberts concurred that they constituted child pornography and advised Finch to arrest King.  King was arrested on two counts of unlawful sexual contact in the first degree, one count of possession of

---

[1] The boy may have initiated the contact with the police.

marijuana, one count of possession of drug paraphernalia, and 20 counts of unlawfully dealing in material depicting a child engaging in a prohibited act. The Middletown Police Department issued a news release about the arrest that day. About a month later, Roberts obtained an indictment charging King with 20 counts of unlawfully dealing in material depicting a child engaging in a prohibited act and two counts of unlawful sexual contact in the first degree. The other charges were nolle prossed. Subsequently, Roberts took a one-month leave of absence to go to a treatment center for alcoholism.

Richard Andrews, then a state prosecutor and now a District Judge in the United States District Court for the District of Delaware, took over the case. Because Andrews was unsure that the images depicted children, he consulted with a pediatric medical expert, Dr. Allan DeJong. Dr. DeJong opined that he could not conclude with medical certainty that the individuals in the images were under 18 years old. Andrews nolle prossed the 20 counts of unlawfully dealing in material depicting a child engaging in a prohibited act.

When Roberts returned, he took control of King's prosecution again. He offered King a deal to plead guilty to two counts of misdemeanor unlawful sexual contact, but King rejected it. Roberts subsequently obtained an indictment charging King with two counts of felony unlawful sexual contact in the first degree and 42 counts of obscenity for showing nude pictures to children.[2] Roberts, dealing with problems stemming from

---

[2] The latter group of charges stemmed from an investigation into King's activities as a facilitator at a county treatment group for youth sex offenders. After King was arrested,

excessive alcohol use, took a second leave of absence (thereafter, he resigned from his position).

Andrews, again responsible for the case, determined that the state could not proceed with the obscenity charges and had them nolle prossed as well. Ultimately, the two counts of unlawful sexual conduct in the first degree were also nolle prossed. King pleaded guilty to two charges brought in an information, possession of drug paraphernalia and endangering the welfare of a child. He also agreed to the revocation of his license as a social worker and agreed never to reapply for his license in Delaware. Later, the Delaware Superior Court granted King's request to expunge his criminal record of the all the charges but the two to which he had pleaded guilty. King v. State, No. CIVA09X07024JOH, 2010 WL 1267115 (Del. Super. Ct. Mar. 25, 2010).[3]

In 2010, King filed suit in the United States District Court for the District of Delaware. In his amended complaint, he sued the Town of Middletown, the Middletown

---

his position was terminated and the director of the program notified parents of children who had participated in King's groups to see if any were victims of other crimes. After being given the newspaper article describing the arrest on child pornography charges, one family responded; the youth was interviewed by a county social worker. He told the social worker that King showed the group pictures of teenagers engaging in sexual acts.

[3] The court concluded, inter alia, that the all the charges in the case had been terminated in King's favor for purposes of the expungement statute. (In so concluding, the court noted that the charges on which King was ultimately convicted were not related to the other charges; for instance, the charge of endangering the welfare of a child was related to having marijuana in his residence on December 30, 2007.)

4

Police Department, Finch, and Roberts for malicious prosecution and defamation.[4]

Roberts filed a motion for judgment on the pleadings, arguing that King's claims were barred by absolute immunity, qualified immunity, sovereign immunity, and the Eleventh Amendment. The District Court granted the motion in relation as to any claims raised against King in his official capacity and any individual capacity claims arising out of his conduct as an advocate (but not to those related to Roberts's investigatory conduct, including his review of the seized images).

Roberts later filed a motion for summary judgment, as Finch, the Middletown Police Department, and the Town of Middletown also did jointly. The District Court granted the motions. The District Court concluded that King could not prove all the elements of a malicious prosecution claim under 42 U.S.C. § 1983 to prevail against Roberts, did not pursue the claim against Finch, and did not argue that the other defendants were personally involved. The District Court declined to exercise supplemental jurisdiction over the defamation claim. The District Court also stated that it would not consider any new theories of liability (namely arguments that the press release violated his First Amendment rights or chilled the exercise of a First Amendment right relating to sexual expression or the viewing of pornography in his home).

---

[4] He named and served two other defendants related to a previous place of employment, but those defendants were dismissed from the action by stipulation. He initially also named the Office of the Delaware Attorney General as a defendant, but instead of serving that defendant, he served Roberts twice. ECF Nos. 9 & 10.

King appeals. He argues that the facts in the record support his claim of malicious prosecution; Roberts, for various reasons, is not entitled to immunity from suit; his defamation claim should have been considered a claim under federal law; and the District Court should have addressed his First Amendment claims. King further contends that the District Judge should have recused sua sponte and transferred the matter to a different venue "when it became evident that a major witness in the case was . . . Judge Andrews." King also submits a motion to seal documents that have been submitted in the Appellees' appendices that relate to the criminal charges that have been expunged from his record. (He states that the expungement order required destruction of those documents or their safekeeping under seal by the State Bureau of Investigation.)

We have jurisdiction under 28 U.S.C. § 1291.[5] Our review of the District Court's rulings is plenary except for the dismissal of the state law claim, which we review for abuse of discretion. Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 184 (3d Cir. 2010); De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 311 (3d Cir. 2003); Leamer v. Fauver, 288 F. 3d 532, 535 (3d Cir. 2002). We may affirm on any basis supported by the record. See Erie Telecomms., Inc. v. City of Erie, 853 F.2d 1084, 1089 n.10 (3d Cir. 1988). Because King did not seek the District Judge's recusal in the District Court, we review only for plain error the District Judge's decision not to recuse, see Selkridge v.

---

[5] We have jurisdiction even though no claims were resolved against one of the named defendants (the Office of the Delaware Attorney General) because that defendant was never served. See United States v. Studivant, 529 F.2d 673, 674 n.2 (3d Cir. 1976).

United Omaha Life Ins. Co., 360 F.3d 155, 166-67 (3d Cir. 2004); plain error is "egregious error or a manifest miscarriage of justice." United States v. Lore, 430 F.3d 190, 211 (3d Cir. 2005).

We consider the recusal issue first. "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). If a reasonable observer aware of all the circumstances "would harbor doubts about the judge's impartiality under the applicable standard, then the judge must recuse." In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 343 (3d Cir. 1998) (internal quotations and citations omitted).

It is not unprecedented for a judge to recuse when a judicial colleague is a witness. See Shaw Grp., Inc. v. Next Factors, Inc., No. ADV.PROC. 01-6661, 2006 WL 2356033, at *1 (Bankr. D. Del. Aug. 15, 2006) (recusing from a contentious adversary proceeding in which a colleague's credibility would be judged in a bench trial). However, recusal cases are very fact-specific. See Nicols v. Alley, 71 F.3d 347, 351 (10th Cir. 1995). Judges need not always recuse when a fellow judge is somehow involved in case. See Jordan v. Fox, Rothschild, O'Brien & Frankel, No. CIV. A. 91-2600, 1995 WL 141465, at *2 (E.D. Pa. Mar. 30, 1995) (noting, in declining to recuse in a case where another judge was said to have played a "critical role in the matters complained of," that "[i]n deciding a motion for summary judgment or presiding at a jury trial, however, a judge does not weigh the testimony or pass upon the credibility of any witness"); cf. Rush v.

7

Borgen, No. 04-C-1154, 2006 WL 1389117, at *5-6 (E.D. Wis. May 17, 2006) (concluding that a state trial judge did not have to recuse himself when a fellow judge was a disinterested third party witness who provided duplicative factual testimony about a crime).

Under the circumstances, we conclude that King has not established plain error. Any error in failing to recuse, if any, was not egregious error, nor was there a manifest miscarriage of justice. See Lore, 430 F.3d at 211. Given the specific facts of this case, it cannot be said that the proceedings were affected. Even if there were bias, it would favor King. Then-prosecutor Andrews had doubts about the case, showed the images to a medical doctor, and nolle prossed the child pornography and obscenity charges. Furthermore, even if the plain error standard were satisfied, we would not provide the discretionary remedy of vacatur. See Selkridge, 360 F.3d at 170-72. Under the standard of review that we employ to evaluate the outcome in the District Court, King will get an independent review of his claims and the relevant legal questions. Id. at 171-72.

Although King argues that Roberts should not have been granted prosecutorial immunity, he was entitled to absolute immunity to the extent that the District Court concluded. See Burns v. Reed, 500 U.S. 478, 490-92 (1991) (discussing the scope of prosecutorial immunity); Yarris v. County of Delaware, 465 F.3d 129, 135 (3d Cir. 2006) (citing Imbler v. Pachtman, 424 U.S. 409, 418 (1976)). His immunity extends to Roberts's statements and actions before the grand jury and before the judge who was

considering King's motion to dismiss the obscenity charges.[6] See Burns, 500 U.S. at

490-92.  Also, the suit could not be sustained against Roberts in his official capacity.  See

_____

[6] To the extent that Roberts's investigatory activities took him outside the scope of
prosecutorial immunity in regards to the prosecution of child pornography charges, we
agree with the District Court that King could not maintain his claim of malicious
prosecution.  A claim of malicious prosecution under 42 U.S.C. § 1983 has the following
five elements:

> (1) the defendants initiated a criminal proceeding;
> (2) the criminal proceeding ended in plaintiff's favor;
> (3) the proceeding was initiated without probable cause;
> (4) the defendants acted maliciously or for a purpose other than bringing
> the plaintiff to justice; and
> (5) the plaintiff suffered deprivation of liberty consistent with the concept
> of seizure as a consequence of a legal proceeding.

Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (quotation marks and citation
omitted).  King and Roberts disputed whether elements two, three, and four were met.
King was arrested after Finch applied for, and was issued, a warrant from a Justice of the
Peace.  King argued that Roberts supplied incorrect information and an inappropriate
determination to Finch in order to obtain the warrant.  But a claim that Roberts was
wrong in his assessment of the ages of the persons in the pornographic images (persons
which some said were clearly underage, but others doubted) is not a claim that Roberts
"knowingly and intentionally, or with reckless disregard for the truth" included false
information in a warrant such that there was not probable cause.  See Franks v. Delaware,
438 U.S. 154, 155-56 (1978).  Furthermore, a grand jury indicted King.  "[I]n a section
1983 malicious prosecution action . . . a grand jury indictment or presentment constitutes
prima facie evidence of probable cause to prosecute."  Rose v. Bartle, 871 F.2d 331, 353
(3d Cir. 1989).  The prima facie evidence of probable cause "may be rebutted by
evidence that the presentment was procured by fraud, perjury or other corrupt means,"
id., but King did not present evidence of fraud, perjury, or other corruption.

As we stated, King's challenge to Roberts's activities regarding the prosecution of
obscenity charges did not reach activities that were outside the scope of absolute
immunity.  King repeats on appeal an argument that he presented to the District Court.
Namely, he argues that Roberts committed fraud when Roberts sought the second
indictment by reporting to a grand jury that teenagers were shown obscene pictures
without having viewed the pictures himself.  In defending the charges at a hearing on a

9

motion to dismiss them, Roberts conceded that he had not seen the pictures and that the charges were based on a description given by a participant in the youth treatment group. However, Roberts's actions, whether or not erroneous, are the type protected by absolute immunity. See Burns, 500 U.S. at 492 (also explaining that the safeguards in the judicial process obviate the need for an action for damages).

We additionally note that on the record before us, it cannot be said that Roberts (even if he made errors in the proceedings) acted maliciously or for a purpose other than bringing King to justice. Malice means spite or ill-will, the use of a prosecution for an extraneous purpose, or a lack of belief in the guilt of the accused. Lippay v. Christos, 996 F.2d 1490, 1503 (3d Cir. 1993). Beyond motives of hatred or ill will, it can include a "reckless and oppressive disregard of [a person's] rights." Id.

King argues that malice is apparent from the circumstances of his prosecution. More specifically, he points to Roberts's involvement in the investigation of the images found on King's computer, Roberts's excessive alcohol use (which, he asserted, caused impairment that led to mistakes, including the initial listing of 42 charges of felony escape instead of obscenity, and an argument with Andrews about the use of an expert), and Roberts's pursuit of the (ultimately nolle prossed) obscenity charges without having seen the allegedly obscene images. In the District Court, he also argued that Roberts had a distaste for pornography, including pornography involving homosexual activity.

Roberts's consideration of the images found on King's computer does not suggest malice; to the contrary, it serves as proof that he was considering (along with others who viewed the images) whether it would serve justice to bring charges against King. Furthermore, even if he had a distaste for legal pornography, King's argument with his then-supervisor Andrews for pressing the child pornography charges apparently stemmed from his belief that the images were of children. While Roberts conceded that he had problems with excessive alcohol use, his problems, while serious, do not suggest that he acted with spite, ill-will, or other malice toward King. The mistake of using escape charges, which was promptly corrected, showed no more than a type of scrivenor's error.

Roberts had not viewed the allegedly obscene images, and he pursued the obscenity charges after the child pornography charges had been nolle prossed in his absence. However, he did not pursue the obscenity charges wholly without basis; he relied on a teenager's statement that King showed a group sexually explicit pictures, and a grand jury indicted King. See Rose, 871 F.2d at 353. Although King equates Roberts's actions to fraud or manufacturing evidence, see id., Roberts presented the evidence he had. Even if he needed more evidence (or the original images) to prosecute the charges, his presentation of the case (to the grand jury and in his arguments at the hearing on the

10

Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Edelman v. Jordon, 415

U.S. 651, 663 (1974).

Because no federal claim was actionable,[7] the District Court did not abuse its

discretion in declining to entertain King's state law claim for defamation.[8] See 28 U.S.C.

§ 1367(c)(3). Lastly, we conclude that the District Court committed no error by not

addressing King's late-raised First Amendment claims. See Josey v. John R.

Hollingsworth Corp., 996 F.2d 632, 641-42 (3d Cir. 1993).

For these reasons, we will affirm the District Court's judgment. We grant King's

motion to seal in the following manner: the Clerk is directed to seal, for a period of 50

---

motion to dismiss) does not suggest that he did not believe that King was guilty. For these reasons, even if King's claims were such that prosecutorial immunity did not protect Roberts in his prosecution of the obscenity charges, we would conclude that the cause of action for malicious prosecution could not be maintained.

[7] As he has explained, King does not pursue a malicious prosecution claim against Finch, the Middletown Police Department, or the Town of Middletown.

[8] King seeks to recharacterize his defamation claim as a federal claim. "[D]efamation is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." Clark v. Twp. of Falls, 890 F.2d 611, 619 (3d Cir. 1989) (citing Paul v. Davis, 424 U.S. 693, 701-12 (1976)). King asserts that his defamation claim is a federal claim on the basis that the press release defamed him and limited his prospects for employment as a social worker. However, the Supreme Court has stated that a claim of defamation (by a police department that circulated a flyer imputing criminal behavior to a person) was not a federal claim even if it would "seriously impair [that person's] future employment opportunities." Paul, 424 U.S. at 697, 712. Although King claims to the contrary, he did not include a "stigma-plus" claim in his complaint. See Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006) (explaining that "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest").

11

(fifty) years, the supplemental appendices filed by Appellee Roberts and Appellees Finch, Town of Middletown, and Middletown Police Department.  See generally Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786-89 (3d Cir. 1994).