**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-1789
_____

ANTHONY EDWARD OLIVER,
Appellant

v.

JOHN WETZEL, SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES;
JAMES ECKARD, SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES;
ERIC TICE, SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES;
L. OLIVER, SUED IN THEIR INDIVIDUAL CAPACITIES;
KEVIN KOHLMAN, SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES;
MARK MCCONNEL, SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES;
MICHAEL GOMES, SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES;
AMY HIMES, SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES;
CHRIS COOK, SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES;
J. SMART, SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES;
S. TREWEEK, SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES;
G. YOHN, SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES;
C. KYLE, SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES;
J. STEVENS, SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES;
JOHN DOE, SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. Civil Action No. 3:16-cv-00407)
District Judge: Honorable John E. Jones III

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 18, 2021
Before:  CHAGARES, PHIPPS, and COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  June 24, 2021)

_____

OPINION*
_____

PER CURIAM

Pro se appellant Anthony Edward Oliver appeals from the District Court's grant of summary judgment for certain defendants and its denial of several motions Oliver filed. For the reasons that follow, we will affirm the District Court's judgment.

I.

At all times relevant to this case, Oliver was incarcerated at the State Correctional Institution in Huntingdon, Pennsylvania ("SCI-Huntingdon"). Oliver has brought civil rights claims pursuant to 42 U.S.C. § 1983 based on his involuntary exposure to environmental tobacco smoke ("ETS") in prison. Since 2008, the Pennsylvania Department of Corrections ("DOC") has prohibited smoking inside any DOC building.

Oliver brought claims against two sets of defendants relevant to this appeal — medical providers who treated him while at SCI-Huntingdon, and DOC staff who worked at SCI-Huntingdon. As discussed further below, the District Court granted summary judgment to the medical defendants on the merits and to the DOC defendants based on Oliver's failure to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA").[1]

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The details of Oliver's medical history, his interactions with DOC staff, and his administrative grievance history while at SCI-Huntingdon were set out in far greater detail by the District Court in its summary judgment opinions. We provide only the facts

## A.    Medical History

Oliver was regularly seen by medical staff at SCI-Huntingdon during the time period relevant to this case. In particular, Oliver was treated for chronic migraines, nausea, vomiting, and reported seizure activity, stemming from an old head injury. In May 2014, Oliver told medical staff that he was experiencing worsening migraines that he believed were caused by ETS exposure. Physician Assistant ("PA") Michael Gomes treated Oliver's symptoms with additional daily pain medication. PA Gomes and PA Mark McConnell also treated Oliver for migraines and reported seizures over the next several months. There were no notations about ETS exposure in Oliver's medical records during that time.

At a medical visit in July 2014 where Oliver reported a seizure that he believed was triggered by ETS exposure, Dr. Kevin Kollman continued Oliver's seizure medications and wrote an order for a "smoke-free environment." See Supp. App'x at A403. However, the order was discontinued later that day after Dr. Kollman was advised by the DOC that he did not have the authority to make such a request.

In March 2015, Oliver reported to the medical department that he had been housed in a cell on the top bunk, with a smoker, and that he had suffered two seizures. He was seen by PA Gomes, who continued his seizure medication and ordered bottom bunk and bottom tier housing accommodations. Oliver next expressed concerns about ETS exposure at an appointment in June 2015, when Oliver saw Dr. Kollman and reported that

relevant to our discussion and the appellees at issue in this appeal. The facts recited below are undisputed unless otherwise noted.

3

he had experienced a seizure. Dr. Kollman conducted a neurological examination, which was normal, and continued Oliver's medications. In December 2015, Oliver reported to the medical department that he had been assigned a cellmate who was a smoker; he requested to be placed in the Restricted Housing Unit ("RHU"), where he believed the prison's no-smoking policy was strictly enforced. Dr. Kollman approved the order from the medical department.

In January 2016, Oliver reported having experienced a seizure. PA McConnell examined him, confirmed that his cranial nerves were intact, discussed medication compliance, and ordered laboratory tests to check Oliver's seizure medication levels. In March 2016, Oliver reported to PA Gomes that he was experiencing nausea and had had a migraine for several days after ETS exposure in a common area. PA Gomes advised Oliver to take his nausea medication as directed and provided measures he could take to reduce his symptoms.

In September 2016, Oliver reported to PA Gomes that he had experienced a migraine and a seizure the previous day, which Oliver attributed to ETS exposure. He requested a change in his medications and an order to be housed in a place where he would not be exposed to smoke. PA Gomes completed an examination, which was normal, and concluded that changing Oliver's medications was not necessary. He advised Oliver to speak with security about enforcing the no-smoking policy.

In an affidavit, Dr. Kollman has averred that, as a physician who was employed by a private healthcare company to provide medical care at SCI-Huntingdon, he had no authority to enforce the DOC's no-smoking policy. He noted that although he could

4

make a recommendation about single-cell, bottom bunk, or bottom tier placement, those housing assignments were within the sole authority of the DOC. Dr. Kollman stated that medical providers do not have authority to assign an inmate to a specific prison or housing block within a facility. Additionally, he explained that he had no knowledge of which prisons or housing blocks had fewer smokers than others and that, because prisoners were often transferred between blocks, the population of smokers in any given part of a prison was constantly subject to change. He stated that he could treat an individual's symptoms or underlying illness from ETS exposure but could not make "administrative, correctional, and/or security decisions relative to a patient's concerns" of ETS exposure. See Supp App'x at A732. Otherwise, he could encourage patients to avoid areas with heightened ETS exposure and to speak with DOC staff about enforcing the no-smoking policy.

## B.     Relevant Grievance History

Oliver contends that, in March 2015, he reported his cellmate's smoking to Correctional Officer ("CO") Shane Treweek, who became agitated and ordered him back to his cell. Oliver claims that Treweek later reassigned him to a top-tier cell with a smoker and assigned Oliver to the top bunk. Oliver later requested to be placed in protective custody and was issued a misconduct report in the course of that process for refusing to return to his cell. Oliver did not file any grievances in March or April 2015.

Oliver next maintains that, in December 2015, CO Jason Stevens assigned him a cellmate who smoked. Oliver claims that when he requested to be seen by the medical department, CO Grant Yohn issued him a pass to do so. When Oliver returned from the

5

medical department, he asked Yohn to place him in protective custody, where Oliver was ultimately sent. CO Stevens issued a misconduct report stating that Oliver had refused to obey an order, which was upheld through the misconduct appeals process. Oliver submitted a grievance in December 2015, relating to his placement in protective custody and his interaction with CO Yohn. The grievance was rejected because he did not provide a relevant form to review the grievance. There is no record that Oliver pursued that grievance further, which he does not contest.

Oliver also contends that, in January 2016, he discussed ETS exposure with CO Lonnie Oliver and requested to be assigned to a single cell. Oliver maintains that, the next day, CO Stevens reassigned him to a second-tier cell, that CO John Smart told him to sign up for sick call to confirm his bottom-tier status, and that he was placed back in a bottom-tier cell after seeing the medical department. Oliver did not file any grievances in January 2016, and the two grievances he filed in February 2016 were not appealed to the Chief Grievance Officer at the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") — the final level of administrative review. Oliver filed a grievance in April 2016 alleging that he was placed in administrative segregation under false pretenses and that COs in that unit packed up and confiscated his legal materials in retaliation for initiating a federal civil rights action; he did not name any COs in the grievance. This grievance was fully appealed through the administrative process.

C.    Procedural History

In March 2016, Oliver filed a complaint in the District Court bringing § 1983 claims against prison and medical staff and a John Doe defendant. After Oliver filed an

6

amended complaint in May 2016, the operative complaint here, all named defendants

moved to dismiss his claims. The District Court granted the motions in part, dismissing

some of Oliver's claims against some defendants. However, the District Court permitted

Oliver to proceed on his claims that: (1) CO Smart, CO Treweek, CO Yohn, CO Oliver,

and CO Stevens violated Oliver's civil rights by permitting his exposure to unreasonably

high levels of ETS in March 2015, December 2015, and January 2016; (2) CO Oliver

retaliated against Oliver in January 2016 for raising concerns about ETS exposure by

destroying his legal materials and falsely accusing him of misconduct; and (3) Dr.

Kollman, PA Gomes, and PA McConnell[2] were deliberately indifferent to Oliver's

serious medical needs in violation of the Eighth Amendment.[3]

The parties proceeded to discovery; after the discovery period set by the District

Court closed, Oliver filed a series of discovery-related motions. The remaining named

defendants then moved for summary judgment. The DOC defendants sought summary

judgment based on their argument that Oliver had not exhausted his administrative

remedies as required by the PLRA; the medical defendants sought summary judgment on

---

[2] The last names of defendants Dr. Kollman and PA McConnell are misspelled in the caption because they were incorrectly spelled in Oliver's amended complaint. We use the correct spelling here.

[3] Oliver also mentioned the Pennsylvania Clean Indoor Air Act ("CIAA") in his amended complaint. Oliver references both the CIAA and the federal Clean Air Act ("CAA") in his appellate brief. However, Oliver did not raise any claims under the CAA in his amended complaint. Further, he does not argue on appeal that the District Court should have construed any of his claims as arising under the CIAA, and he makes no arguments regarding how he could bring a cause of action or state a claim under CIAA. Thus, we do not discuss these statutes further.

the merits. The District Court subsequently denied several of Oliver's discovery motions without prejudice to his ability to renew them if the District Court denied summary judgment to the DOC defendants on the issue of exhaustion. Oliver later filed several additional discovery motions.

The District Court then granted summary judgment for the DOC defendants. The District Court also denied Oliver's pending discovery motions regarding the DOC defendants as moot because the discovery he sought went to the merits of his claims against those defendants, and denied his discovery motions regarding the medical defendants on the merits. Oliver sought reconsideration, which was denied. Following some additional motions practice, the District Court granted summary judgment for the remaining medical defendants. Oliver timely appealed.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.[4] We exercise

---

[4] Although the District Court did not specifically address Oliver's claim against the "John Doe" defendant that Oliver named in his amended complaint, that defendant was never served with process and thus was never a party to the case within the meaning of Federal Rule of Civil Procedure 54(b). See Gomez v. Gov't of Virgin Islands, 882 F.2d 733, 735-36 (3d Cir. 1989); United States v. Studivant, 529 F.2d 673, 674 n.2 (3d Cir. 1976). Accordingly, the District Court's orders are final and appealable, and we have jurisdiction over this appeal. See Gomez, 882 F.2d at 735-36. We note that Oliver raises no claim of error regarding the "John Doe" defendant.

Additionally, although Oliver's notice of appeal referenced only the District Court's order granting summary judgment to the medical defendants, Oliver's intent to appeal from both of the District Court's summary judgment orders and certain discovery-related decisions is plain from his appellate brief. The discovery-related issues are connected to the grant of summary judgment for the medical defendants, and the parties have had a full opportunity to address all of the decisions Oliver seeks to appeal. See Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 184 (3d Cir. 2010) ("[W]e can exercise jurisdiction over orders not specified in [a] Notice of Appeal if: (1) there is a connection

plenary review over the District Court's summary judgment decisions. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is appropriately granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "We review a district court's discovery orders for abuse of discretion, and will not disturb such an order absent a showing of . . . prejudice." Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 281 (3d Cir. 2010).

III.

We read Oliver's brief to challenge: (1) the District Court's grant of summary judgment for the medical defendants; (2) the District Court's grant of summary judgment for the DOC defendants; and (3) the District Court's denial of certain discovery motions. Having carefully reviewed the record and the parties' filings, we will affirm.

First, the District Court properly granted summary judgment for Dr. Kollman, PA Gomes, and PA McConnell on Oliver's Eighth Amendment claims. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation omitted). Establishing a claim requires proving both an

---

between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues.") (internal quotations marks and citation omitted).

objective component — "a serious medical need" — and a subjective component — "acts or omissions by prison officials that indicate deliberate indifference to that need." See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

The record reflects that every time Oliver sought treatment for symptoms associated for ETS exposure, the medical defendants provided it. Depending on the circumstances, the medical defendants: (1) conducted exams; (2) changed, renewed, or continued Oliver's medications; (3) provided non-medical suggestions for treating his symptoms; (4) advised him to speak with DOC staff about ETS exposure; and (5) approved orders for bottom bunk and bottom tier status. Dr. Kollman also approved a recommendation to place Oliver in the RHU, at Oliver's request, based on Oliver's belief that the prison's no-smoking policy was more strictly enforced there. Additionally, as far back as 2014, Dr. Kollman attempted to order a "smoke-free environment" for Oliver, before he was informed that he lacked the authority to make that request.

In his brief, Oliver argues that the medical defendants merely provided "continuity of care" rather than treating his ETS exposure symptoms, but he does not explain what further care or treatments the medical defendants should have provided. See Appellant's Br. at p. 3. Next, he argues that the medical defendants had authority to transfer him or order ETS-related prison and cell restrictions beyond what they ordered, but there is no support in the record for that argument.[5] Rather, Dr. Kollman's undisputed affidavit

---

[5] Oliver filed an appendix that includes a December 2018 determination by the Central Office Inmate Disability Accommodations Committee to transfer him to a different DOC facility. He argues that this evidence was not considered by the District Court and that it supports his claims against the medical defendants. However, even if these documents

10

indicates that he and the other medical defendants lacked the authority to reassign Oliver to a different cell, a different part of the prison, or another prison altogether.  Further, the DOC had already prohibited smoking inside SCI-Huntingdon at all times relevant to Oliver's claims.

Oliver also argues that the District Court "never ruled on the issue of exhaustion" and never permitted him to renew his discovery motions regarding his claims against the medical defendants.  See Appellant's Br. at p. 3, 5.  However, the District Court did not need to address exhaustion where the medical defendants sought and were appropriately granted summary judgment on the merits, and Oliver does not explain what additional discovery he needed for his claims to survive summary judgment.  Under these circumstances, the medical defendants are entitled to summary judgment on Oliver's Eighth Amendment claims.  See U.S. ex rel. Walker v. Fayette County, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (per curiam) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.") (citation omitted).

Next, the District Court properly granted summary judgment for CO Smart, CO Treweek, CO Yohn, CO Oliver, and CO Stevens on Oliver's remaining claims.  The PLRA requires prisoners to exhaust available administrative remedies before bringing an

---

are properly before this Court, they do not establish that any of the medical defendants had authority to transfer Oliver or to make further orders regarding his cell assignment or location within SCI-Huntingdon; this transfer determination was made by a DOC entity, after the time period at issue in this case.

11

action alleging unconstitutional conduct by prison officials. 42 U.S.C. § 1997e(a). "[P]roper exhaustion of administrative remedies is necessary" to fulfill the PLRA's exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 84 (2006). The Pennsylvania DOC's grievance policy involves a three-step process that an inmate must fully complete in order to properly exhaust his administrative remedies under the PLRA. See Booth v. Churner, 206 F.3d 289, 292 n.2 (3d Cir. 2000). Inmates must substantially comply with a prison grievance system's procedural rules to avoid procedural default of a claim. See Spruill v. Gillis, 372 F.3d 218, 228-32 (3d Cir. 2004).

As the District Court properly concluded, the record demonstrates that Oliver did not exhaust his claims against the remaining defendants. For his first set of claims against CO Smart, CO Treweek, CO Yohn, CO Oliver, and CO Stevens based on incidents that occurred in March 2015, December 2015, and January 2016, the undisputed record shows that Oliver did not file any grievances in March or April 2015, and did not fully exhaust any grievances that he filed from December 2015 through February 2016 by completing the appeals process. See Commonwealth of Pennsylvania, Department of Corrections, Inmate Grievance System, Policy No. DC-ADM 804 (effective February 16, 2016) (explaining that an initial written grievance must be submitted within 15 working days after an event upon which a claim is based). For Oliver's remaining claim against CO Oliver, he fully exhausted a grievance in April 2016, alleging that COs confiscated his legal materials and that he was placed in administrative segregation under false pretenses. However, Oliver never identified CO Oliver by name in his initial grievance or in any of his appeals, as was required to exhaust

12

a claim against him, and grievance officers did not name CO Oliver in that process such that Oliver's failure to name him could be excused. See Spruill, 372 F.3d at 234.

In his appellate brief, Oliver does not contest the District Court's conclusions on exhaustion.[6] Rather, Oliver maintains that the District Court never "addressed the factual issue of ETS exposure inside the prison facility" in granting summary judgment for the DOC defendants. Appellant's Br. at p. 5. However, the District Court did not need to address this issue after it correctly concluded that Oliver failed to exhaust his administrative remedies on his remaining claims.[7]

Finally, Oliver makes no additional specific challenges to the District Court's rulings on his discovery motions. He does not identify any information that he believes could have been identified through further discovery or how further discovery might have supported his claims. Because Oliver cannot demonstrate how he was prejudiced by the District Court's decisions, we discern no error in the District Court's decisions on his discovery motions.

Accordingly, for the reasons above, we will affirm the judgment of the District

---

[6] Oliver has raised exhaustion-related arguments for the first time in his reply brief, but we do not "reach arguments raised for the first time in a reply brief." See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 146 (3d Cir. 2017).

[7] Oliver sought reconsideration after the District Court granted summary judgment for the DOC defendants but before the District Court granted summary judgment for the medical defendants and then entered judgment. The District Court dismissed his motion for reconsideration as untimely under M.D. Pa. Local Rule 7.10. Oliver mentions the District Court's order denying reconsideration in his appellate brief but makes no specific arguments about it. In any event, we discern no abuse of discretion in the District Court's prejudgment application of its local rule. See Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 246 (3d Cir. 2010).

Court.[8]

---

[8] Oliver's motion for appointment of counsel is denied.  <u>See</u> <u>Tabron v. Grace</u>, 6 F.3d 147, 155-56 (3d Cir. 1993).  Oliver's motion to file a reply brief out of time is granted.